(11 App. Div. 123.)

## COOK v. DEAN et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1896.)

1. BRIDGES—DEFECTS—LIABILITY OF CONTRACTOR.

A contractor for the erection of a public bridge, who agrees to erect a temporary bridge pending the construction of the permanent bridge, and to keep it in good repair during the progress of the work, all work to be done under the direction of the engineer, is liable for injuries caused by failure to keep the temporary bridge in repair, though he had not been notified by the engineer that repairs were needed.

2. SAME—PROOF OF NEGLIGENCE.

The question whether a bridge was in proper repair should, in an action for injuries caused by its fall, have been submitted to the jury, where there was evidence that there had been violent contact from a vessel passing through the draw; that the bridge had been pulled from its moorings by a vessel which had attached its hawser to the bridge; that the bridge would sag down in the center when two or three persons passed over it; that one of the guy ropes which held the frame in place had been broken, causing the draw to tilt to one side when it was open, and also when closed, if sufficient weight was applied on the opposite side; and the right to a submission to the jury is not affected by the fact that defendants gave evidence that the bridge was in proper condition, and had been repaired after the injuries to it caused by the vessels passing through.

3. ALTERATION OF CONTRACT—WHEN IMMATERIAL.

The liability of contractors for injuries caused by their failure to keep in repair a temporary bridge, erected by them for use pending the construction of the permanent bridge, is not affected by the fact that the contract had, after execution, been altered by inserting a limitation as to the time of performance, where it does not appear who made the alteration, or for what purpose it was made, and no one had insisted on such clause.

Appeal from trial term, Kings county.

Action by Ellen Cook, as administratrix of John Cook, deceased, against Caspar W. Dean and others to recover damages for the death of intestate. From a judgment in favor of defendant dismissing plaintiff's complaint upon the merits, plaintiff appeals. Reversed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Charles J. Patterson, for appellant.

L. Laflin Kellogg and Alfred C. Petté, for respondents.

HATCH, J. Plaintiff's intestate met his death by the falling of a temporary drawbridge over Newtown creek, which divides the counties of Kings and Queens. Defendants entered into a contract with the boards of supervisors of the respective counties for the construction of a permanent bridge over said creek, and also for the construction of the temporary structure, which fell, the latter to be used by the general public until the new bridge should be completed. The contract was in writing, and contained a clause for the construction of the bridge in accordance with the "requirements, terms, and conditions of the drawings and plans therefor on file in the office of the clerk of the board of supervisors of Kings county, and specifications therefor annexed hereto, and which said drawings,

plans, and specifications are expressly made and form a part of this agreement, all to be done and performed under the direction and supervision of the engineers" representing the counties. The specifications provided for the erection of a temporary bridge, in such position as to make convenient and safe approaches from both shores, to the satisfaction of the engineer. It was further provided that defendants "shall and hereby agree to keep the above specified structure in good repair during the progress of the work on the main structure, and until directed to remove the same by the engineer."

When the contract was signed, these specifications were not in fact attached to it, but they were then on file in the office of the clerk of the board of supervisors in the county of Kings; and the defendants recognized their engagement thereunder, for they immediately sublet the contract for the erection of the temporary structure, and upon its completion entered upon and assumed the duty of keeping it in repair. So. that, whatever legal obligations arise out of these provisions in the contract, defendants have become subject thereto, and are bound thereby. This bridge was a public thoroughfare, kept and maintained for the use of the general public, and was used daily by a large number of persons. The obligation to repair was, therefore, for the benefit of the general public, who had an interest therein. The covenant contained in the contract was absolute, and imposed upon the defendants an absolute duty to keep the structure in repair, and safe for the purpose for which it was used, so far as proper repairs thereon would make it safe. Under these circumstances defendants became liable for neglect of duty in connection with the obligation assumed, and such neglect created a right of action in favor of a person who suffered injury therefrom as a consequence thereof. Robinson v. Chamberlain. 34 N. Y. 389. This principle is firmly established as the law of this state, and has been recognized and applied in numerous adjudged cases. City of Brooklyn v. Brooklyn City R. Co., 47 N. Y. 475–486; Little v. Banks, 85 N. Y. 258.

The basis of responsibility does not rest upon the question of liability of the respective counties, as applied to the present case. The obligation to keep and maintain a public bridge at this place had been assumed by the public authorities. It therefore became a public thoroughfare, and a public obligation was created to maintain and keep it safe for public use. The covenant upon defendants' part was an assumption of this public duty, and, having assumed it, they became bound to perform it at the peril of responding in damages to a person injured by their fault and neglect, no matter what the legal attitude of the respective counties might or might not be. The doctrine of Lawrence v. Fox, 20 N. Y. 268, has direct application, as the necessary privity of relation is established. Little v. Banks, supra. Making application of this doctrine to this case, we find that plaintiff's proof tended to establish that this bridge had been out of repair and in a dangerous condition for a considerable period of time prior to the accident which produced the death of plaintiff's intestate. This was evidenced by the fact that violent contact had

42 N.Y.S.—66

been had and injury sustained from a vessel passing through the draw; that, a short time prior to its fall, a vessel had attached its hawser to the bridge, and forcibly pulled it from its moorings; and that it then partially fell down, and broke some of the cables which supported it. This would have authorized the jury to infer that substantial damage was inflicted thereby, which had not been properly repaired. The evidence also tended to establish that the bridge would sag downward in the center when two or three persons passed over it, and that the attention of the engineer had been called to this fact prior to the accident. One of the guys which held the "A frame" in place was removed entirely, leaving but two to support it. This caused the draw to tilt to one side when it was opened, and also permitted the same thing when closed, if sufficient weight was applied upon the side of the bridge opposite to that from which the guy was removed. It is true that it was testified that the guy performed no office in support of the bridge when closed, yet the fact that it tilted when opened, and would do so, if closed, with weight applied to the opposite side, authorized the inference that such tilting had a tendency to, and did, weaken the structure, and the absence of the guy contributed to that end. Without calling attention to the evidence in detail, we think the proof offered by plaintiff clearly entitled her to have the questions of whether the bridge was in proper repair, and, if not, whether such lack of repair contributed to its fall and to the death of plaintiff's intestate, submitted to the jury.

We have not overlooked the fact that defendants' proof tended to establish that the bridge was in proper condition; that it was repaired, and new cables attached, after the vessel hauled the bridge from its moorings; that the supports of the bridge had broken squarely off, and this was due to an unusual and improper strain, and not from any lack of sufficient repair. These and other questions were supported by defendants' proof, were put in issue by plaintiff's case, and became questions for solution by the jury. Bearing upon these questions, it has been held that, where a bridge fell, by reason of a load not in excess of what it ought to bear, the fact that it broke is some evidence of lack of proper repair. Stack v. Bangs, 6 Lans. 262. The jury would have been authorized to infer that the cause of this disaster did not arise from any excessive load which the bridge carried at the time it fell. It has also been held that the obligation is imposed upon the party charged with the duty of making repairs to inform themselves of the condition of the bridge, and make the necessary repairs if needed. McCarthy v. City of Syracuse, 46 N. Y. 194. The duty to repair in this case, as we have seen, was absolute, and defendants could not relieve themselves from that duty by asserting that they had not been notified by the engineer that repairs were needed. They were required to exercise a reasonable degree of watchfulness, and, if they failed in this, and injury was occasioned thereby, liability attached. Notice of a defect was not necessary to charge them with liability. They were bound to look for it, and repair when necessary. Under the law,

no tribunal except a jury can make answer to the questions which the record presents.

The court may have dismissed the complaint upon the ground that the contract had been altered by the insertion of "107" days, as the time for performance, after the contract was signed, which rendered it invalid. It does not appear who made the change, or for what purpose it was made. It defrauded no one, and there is no evidence of any bad faith in connection with it. What the terms of the contract were remained as clear after it was inserted as before. No one attempted to insist upon this clause, and it does not appear that any of the parties thereto expected that anybody would make any claim thereunder. It could have no effect upon the liability of the defendants in what they did. It neither added anything to it, or took anything away. The defendants assumed to erect this bridge, and to take upon themselves the duty of keeping it in repair. If liability attached, it was by virtue of these acts; and this change could not be made to affect the present condition in the slightest degree.

Plaintiff was entitled to have the issues which his pleading and proof presented passed upon by the jury, and, having been denied this right, the judgment should be reversed, and a new trial granted, with costs to abide the event. All concur.