JOSEPH A. HAEFELIN, Appellant, v. JOHN B. McDONALD, Respondent.

*New York subway — extent of the city's liability — a third party whose abutting property has been injured through the negligence of a sub-contractor cannot enforce his claim for damages under the indemnity clauses of the contract— they were intended only for the protection of the city.*

Pursuant to chapter 4 of the Laws of 1891, as amended by chapter 752 of the Laws of 1894, chapter 519 of the Laws of 1895, and chapter 729 of the Laws of 1896, the board of rapid transit railway commissioners in the city of New York, in February, 1900, entered into a contract with one McDonald for the construction and equipment of the underground railroad authorized by the act. The contract provided as follows: "The contractor admits and covenants to and with the City that the plans and specifications and other provisions of this contract for construction, if the work be done without fault or negligence on the part of the contractor, do not involve any danger to the foundations, walls or other parts of adjacent buildings or structures; and the contractor shall, at his own expense, make good any damage that shall, in the course of construction, be done to any such foundations, walls or other parts of adjacent buildings or structures. The contractor shall, during the performance of the work, safely maintain the traffic on all streets, avenues, highways, parks or other public places in connection with the work, and take all necessary precautions to place proper guards for the prevention of accidents, and put up and keep at night suitable and sufficient lights and indemnify and save harmless the City against and from all damages or costs to which it may be put by reason of injury to the person or property of another or others, resulting from negligence or carelessness in the performance of the work or from guarding the same, or from any improper materials used in its construction, or by or on account of any act or omission of the contractor or the agents thereof. The contractor shall be responsible for all damage which may be done to abutting property or buildings or structures thereon by the method in which the construction hereunder shall be done, but not including in such damage any damage necessarily arising from proper construction pursuant to this contract, or the reasonable use, occupation or obstruction of the streets thereby. The con-

tractor shall obey any order of the engineer to support or secure abutting property or any structure thereon; but the contractor shall not be relieved of responsibility by any failure or omission of the engineer to give any such order or notice of any danger."

*Held,* that the city was not liable for any negligence of the contractor or sub-contractor in carrying out the contract; that its only duty was to see that the plans and specifications for the work were sufficient, and that the railroad could be constructed under them without injury to the property of others, and that the highways were maintained in a safe condition during the performance of the work;

That the quoted provision of the contract was intended to protect the city in these respects by requiring the contractor to indemnify it against liability for injuries resulting to the abutting property, while carrying out the plans and specifications, in consequence of any defect or insufficiency in such plans and specifications, and from liability for injury to person or property resulting from a failure to maintain in a safe condition for traffic the streets and highways affected by the construction of the underground railroad;

That the portion of the quoted provision of the contract providing, "The contractor shall be responsible for all damage which may be done to abutting property or buildings or structures thereon by the method in which the construction hereunder shall be done, but not including in such damage any damage necessarily arising from proper construction, pursuant to this contract, or the reasonable use, occupation or obstruction of the streets thereby," should be construed in subordination to this purpose;

That such provision did not impose upon the contractor liability for damages to abutting property caused by the negligence of sub-contractors in adopting improper and unreasonable blasting methods;

That the abutting owner could not maintain an action against the contractor, upon the last-mentioned covenant, to recover the damages thus occasioned, under the exception to the general doctrine announced in the case of *Lawrence* v. *Fox* (20 N. Y. 268), as the city owed him no legal or equitable obligation in this respect;

That the abutting owner could not maintain the action against the contractor upon such covenant under the doctrine announced in *Little* v. *Banks* (85 N. Y. 258), as the liability sought to be enforced did not arise out of a failure to perform a duty beneficial to the public which the contractor had agreed to perform.

PATTERSON, J., dissented.

APPEAL by the plaintiff, Joseph A. Haefelin, from an interlocutory judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 19th day of January, 1904, upon the decision of the court, rendered after a trial at the New York Special Term, sustaining the defendant's demurrer to the plaintiff's complaint.

*John A. Garver,* for the appellant.

*De Lancey Nicoll,* for the respondent.

INGRAHAM, J.:

The complaint alleges that the plaintiff is the owner of a piece of property abutting on the easterly side of Broadway, between One Hundred and Sixty-fourth and One Hundred and Sixty-fifth streets, in the city of New York; that on or about February 21, 1900, the city of New York, acting by the board of rapid transit railway commissioners, entered into a contract with the defendant for the construction and equipment of a rapid transit railroad upon the routes and pursuant to the general plan therein prescribed; that the said contract provided that the defendant should receive, in consideration for the said work, a large sum of money from the city; that the said routes and plan provided for the construction of the said railroad under the portion of Broadway upon which the plaintiff's premises abut, at a depth of more than one hundred feet below the surface of the street; that the said contract contained provisions which were made for the benefit of persons whose property abutted on the streets in which said railroad was to be constructed, making the defendant liable to the owners of such abutting property, or of buildings or structures thereon, for damages thereto caused by improperly performing the work thereunder, which provisions were as follows:

"The contractor admits and covenants to and with the City that the plans and specifications and other provisions of this contract for construction, if the work be done without fault or negligence on the part of the contractor, do not involve any danger to the foundations, walls or other parts of adjacent buildings or structures; and the contractor shall, at his own expense, make good any damage that shall, in the course of construction, be done to any such foundations, walls or other parts of adjacent buildings or structures. The contractor shall, during the performance of the work, safely maintain the traffic on all streets, avenues, highways, parks or other public places in connection with the work, and take all necessary precautions to place proper guards for the prevention of accidents, and put up and keep at night suitable and sufficient lights and indemnify and save harmless the City against and from all damages

or costs to which it may be put by reason of injury to the person or property of another or others, resulting from negligence or carelessness in the performance of the work or from guarding the same, or from any improper materials used in its construction, or by or on account of any act or omission of the contractor or the agents thereof. The contractor shall be responsible for all damage which may be done to abutting property or buildings or structures thereon by the method in which the construction hereunder shall be done, but not including in such damage any damage necessarily arising from proper construction pursuant to this contract, or the reasonable use, occupation or obstruction of the streets thereby. The contractor shall obey any order of the engineer to support or secure abutting property or any structure thereon; but the contractor shall not be relieved of responsibility by any failure or omission of the engineer to give any such order or notice of any danger."

It was further alleged that the specifications which were annexed to and made a part of the said contract also contained provisions which were likewise intended for the benefit of owners of abutting property, regulating blasting in tunnel excavations which required blasting to be conducted with all possible care and in such a manner as not to shatter the roof and sides outside of the section lines nor endanger adjoining property; that blasts should not be fired between the hours of eight P. M. and seven A. M. where tunnels are in front of private residences without the express permission of the board and under such restrictions as it may impose. That prior to September, 1900, the defendant entered into a sub-contract with the firm of L. B. McCabe & Brother, whereby the said firm agreed to construct the sections of said railroad known as Nos. 13 and 14, and which include that portion of said railroad which passes through the part of Broadway upon which the premises of plaintiff abut; that during the month of September, 1900, the said firm, or persons acting under or by authority of their said sub-contract with the defendant, entered upon and took possession of the portion of Broadway lying within the route designated by the said contract between One Hundred and Fifty-eighth and One Hundred and Sixty-eighth streets, and commenced to excavate the same for the purpose of constructing the said railroad; that the excavation was through solid rock, and was carried on by means of blasting which

was done in violation of the specifications of the contract, the blasting being carried on at night between the hours of seven P. M. and seven A. M., without the permission of the said board; that "the method employed for such blasting was not proper or reasonable for the prosecution of the said work, but, on the contrary, such heavy and excessive charges and high explosives were used in such blasting, that the entire neighborhood was shaken thereby; and the provisions of the said contract were otherwise violated, and other improper methods were adopted for the construction of the said work."

It was further alleged that the plaintiff's apartment house was so shaken and shattered by the jar and concussion caused by such improper and unnecessary and excessive charges and high explosives used in the blasting, that the windows thereof were broken, the ceilings were cracked and in danger of falling, and the brick walls were loosened and shattered and otherwise seriously injured; and that the damage sustained by the plaintiff by reason of the improper manner in which the defendant performed the said contract was $6,000; for which amount the plaintiff demands judgment.

The defendant demurred to this complaint upon the ground that it did not state facts sufficient to constitute a cause of action, which demurrer was sustained by the Special Term, and the plaintiff appeals.

The damage complained of and for which the plaintiff seeks to recover was caused by the negligence of sub-contractors or by the employment of improper and unreasonable methods for blasting by a sub contractor in doing the work required by the sub-contract. It is not alleged that this defendant was personally responsible for the method employed by the sub-contractors or for the negligence or improper work done by them. In determining this question we have first to ascertain the true construction of this clause of the contract and just what obligation was imposed on the defendant, and then whether the plaintiff can enforce directly against the contractor the covenants entered into with the city.

The statute under which this contract was made is chapter 4 of the Laws of 1891, as amended by chapter 752 of the Laws of 1894, chapter 519 of the Laws of 1895, and chapter 729 of the Laws of 1896. That act provided that there should be submitted to the vote

of the qualified electors of the city of New York the question whether an underground railroad should be built by and at the expense of the municipal corporation, and if a majority of the voters was in favor of such municipal construction that the railroad should be constructed by the city and at the public expense, and that the board of rapid transit railway commissioners should construct said railroad and make and let all contracts required for the performance of the work necessary to be done and performed in and about the construction thereof. (Laws of 1894, chap. 752, §§ 12, 13.) Section 34 of the act of 1891, added by the act of 1894, and amended by the act of 1896, provided that in case the people should determine by vote that such railway should be constructed for and at the expense of the city, as soon as the necessary consents had been obtained* and the detailed plans and specifications had been prepared as provided in section 6 of the act,† the said board, " for and in behalf of said city, shall enter into a contract with any person, firm or corporation which, in the opinion of said board, shall be best qualified to fulfill and carry out said contract for the construction of such road or roads upon the routes and in accordance with the plans and specifications so adopted for such sum or sums of money to be raised and paid out of the treasury of said city, as hereinafter provided, and on such terms and conditions, not inconsistent with the aforesaid plans and specifications, as said board shall determine to be best for the public interests."

It was further provided that in case it should be determined by a vote of the people to construct this road by and at the expense of the city, then the road or roads so constructed should be and remain the absolute property of the city so constructing it or them, and should be deemed to be a part of the public streets and highways of said city, to be used and enjoyed by the public upon the payment of such fares and tolls, and subject to such reasonable rules and regulations as might be imposed and provided for by the board of rapid transit railway commissioners in said city. (Laws of 1891, chap. 4, § 63, added by Laws of 1894, chap. 752, and amd. by Laws of 1895, chap. 519.) The general plans for the building of this road were to be made by the board of rapid transit railway commissioners, and were to be transmitted to the common council of the city and

---

* See Laws of 1895, chap. 519, amdg. § 5 of statute of 1891.— [REP.

† See Laws of 1896, chap. 729, amdg. § 6 of statute of 1891.— [REP.

approved by it (Laws of 1891, chap. 4, §§ 4, 5, as amd. by Laws of 1895, chap. 519), so that when the consents of the local authorities and the property owners, or, in lieu thereof, the authorization of the General Term of the Supreme Court (now the Appellate Division thereof), should have been obtained, the board of rapid transit railway commissioners should at once proceed to prepare detailed plans and specifications for the construction of such rapid transit railroad or railroads, including all devices and appurtenances deemed by it necessary to secure the greatest efficiency, public convenience and safety. (Laws of 1891, chap. 4, § 6, as amd. by Laws of 1896, chap. 729.)

The plans thus provided having been made by the rapid transit railway commissioners, and the general plans approved by the common council, the commissioners, acting thus under the authority conferred upon them by the Legislature, made, on behalf of the city of New York, a contract to build a railroad which, when constructed, was to be a public highway in the city of New York, to be used and enjoyed by the public upon payment of such fares and subject to such rules and regulations as might be imposed by the board of rapid transit railway commissioners. The only control that the city or its officers or agents had in relation to this contract was the right to approve or disapprove of the general plans for the construction of the road when adopted by the rapid transit railway commissioners. Neither the city nor its agents had authority to prescribe the form of the contract, or the conditions under which the railroad was to be constructed, or to control the action of the rapid transit railway commissioners or the contractors with whom the commissioners had made a contract. The municipal corporation was not a contracting party, except so far as it was bound by the express provisions of the contract made on its behalf by the rapid transit railway commissioners acting under the legislative mandate. Under these conditions it is well settled that the city would not be liable for any negligence of a contractor or sub-contractor in carrying out the contract. The rapid transit railway commissioners, on behalf of the city of New York, however, were required to prepare plans and specifications, and the general plans for the construction of the road were to be approved by the common council, and the only responsibility that rested upon the city was in regard to the general plans for the construction of this road.

This being the relation that the city bore to the work, the contractor undertook to construct the road according to these plans and specifications, and in the contract covenanted to and with the city that the plans, specifications and the contract for construction, if the work be done without fault or negligence on the part of the contractor, would not involve any danger to the foundations, walls or other parts of adjacent buildings or structures; and in connection with this covenant he agreed to make good, at his own expense, any damage which should in the course of construction be done to any foundations, walls or other parts of adjacent buildings or structures. The contract was between the city and the contractor. He was to construct this road according to the plans and specifications and under the contract. He accepted the plans and specifications and the contract, and covenanted that if the work was properly done under it, it would avoid injury to abutting property; covenants important for the city to indemnify it for any claim for damages caused by the failure of the plans and specifications and the contract to require such a method of construction as would avoid injury to adjacent property. And to enforce this covenant, which was in substance an agreement to indemnify the city for its failure to see to it that the plans and specifications and contract were sufficient for the purpose, and would enable the construction of this public highway without injury to adjacent property, the contractor undertook that he would, at his own expense, make good any damage that should in the course of construction be done to abutting property. There is no indication in any part of the contract that it was the intention of the parties to impose upon the contractor a liability to the owners of the abutting property for negligence of sub-contractors or others over whom he had no control; and if such had been the intention, a clause expressly imposing such a liability would have been inserted.

Viewed in the light of the object sought to be attained, it seems to me that the only construction which can be given to this provision of the contract is that thereby it was intended to protect the city so as to impose upon the contractor responsibility for any defect or insufficiency in the plans and specifications, and an obligation to assume all damages caused in the course of the construction of the railroad, in following out the plans and specifications and the con-

tract, to the foundations, walls or other parts of adjacent buildings or structures. The other provisions of this clause in the contract seem to me to sustain this construction. It is to and with the city that the defendant covenants. He undertakes that during the performance of the work he will safely maintain traffic on all streets, avenues, parks or other public places, and take all necessary precautions to place proper guards for the prevention of accidents, and put up and keep at night suitable and sufficient lights, and indemnify and save harmless the city against and from all damages or costs to which it may be put by reason of injury to persons or property of another or others, resulting from negligence or carelessness in the performance of the work or from guarding the same, or from any improper materials used in its construction, or by or on account of any act or omission of the contractor or his agents. Here the contractor assumes the duty that is imposed upon the city of keeping these streets and avenues in a safe condition for traffic, and the duty of suitably lighting excavations in the streets to avoid injury; and agrees to indemnify and save harmless the city from the damages which may be imposed upon it by reason of negligence or carelessness of the contractor or his agents in the performance of the work or in guarding the same. The defendant assumes the duties and obligations imposed on the city in relation to the construction of the road, and is responsible for the damages caused thereby; but it is to the city that the promise is made, and it is to the city that he is responsible, and there is no obligation or promise in this agreement to be responsible to any one else. The plaintiff was not a party to this contract. He was a stranger to the consideration upon which the promise of the defendant was based. There was no privity between him and the defendant, nor was the city under any obligation to indemnify him against injury that should be occasioned to his property by the negligence of a contractor in the performance of a contract made in pursuance of legislative authority by officers appointed for that purpose by the Legislature, and over the performance of which the municipal corporation had no control.

It is a general rule of the English common law that a stranger to the consideration could maintain no action upon a contract. This was subject to an exception, that where the person to be bene-

fited was the child of the promisee, the child could maintain an action against the promisor upon the contract (*Dutton* v. *Poole*, 2 Lev. 210; affd. in Exchequer Chamber, T. Raym. 302), and this exception has also been extended in this State to the case of a contract made by a husband for the benefit of his wife. (*Buchanan* v. *Tilden*, 158 N. Y. 109.) It is also established as an exception to this general rule that where a party to a contract undertakes to pay to a third party a sum of money based upon a consideration moving from the other party to the contract, and where the party paying the consideration was under an obligation to pay such sum of money to the third party, the third party can enforce that obligation, although not a party to the contract. This exception was established in this State by *Lawrence* v. *Fox* (20 N. Y. 268). To bring a case, however, within this exception to the general rule, there must be a legal or equitable obligation or duty on the part of the promisee to the third party for whose benefit the promise was made. That it would be a benefit to the promisee to have such a covenant enforced, or that there was a moral obligation of the promisee to the third party for whose benefit the promise was made, is not sufficient to allow the third party to maintain an action to enforce the promise. In *Durnherr* v. *Rau* (135 N. Y. 222) Judge ANDREWS says, in speaking of the obligation of the promisee to the third party who sought to enforce the covenants: "The most that can be claimed is that the mortgages having (as is assumed) been executed to secure his (the promisee's) debts, and he having procured the wife to join in them and pledge her right for their payment, he owed her a moral duty to pay the mortgages and thereby restore her to her original situation. But according to our decisions no legal or equitable obligation of which the law can take cognizance was created in favor of the wife against the husband or his property by these circumstances. * * * There is lacking in this case the essential relation of debtor and creditor between the grantor and a third person seeking to enforce such a covenant, or such a relation as makes the performance of the covenant at the instance of such third person a satisfaction of some legal or equitable duty owing by the grantor to such person, which must exist, according to the cases, in order to entitle a stranger to the covenant to enforce it. It is not

sufficient that the performance of the covenant may benefit a third person. It must have been entered into for his benefit, or at least such benefit must be the direct result of performance and so within the contemplation of the parties, and in addition the grantor must have a legal interest that the covenant be performed in favor of the party claiming performance. * * * The application of the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268) to this case would extend it much further than hitherto, and this cannot be permitted in view of the repeated declarations of the court that it should be confined to its original limits."

In *Vrooman* v. *Turner* (69 N. Y. 280) Judge ALLEN said : "To give a third party who may derive a benefit from the performance of the promise, an action, there must be, *first*, an intent by the promisee to secure some benefit to the third party, and *second*, some privity between the two, the promisee and the party to be benefited, and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise or an equivalent from him personally. It is true there need be no privity between the promisor and the party claiming the benefit of the undertaking, neither is it necessary that the latter should be privy to the consideration of the promise, but it does not follow that a mere volunteer can avail himself of it. A legal obligation or duty of the promisee to him will so connect him with the transaction as to be a substitute for any privity with the promisor, or the consideration of the promise, the obligation of the promisee furnishing an evidence of the intent of the latter to benefit him, and creating a privity by substitution with the promisor. A mere stranger cannot intervene and claim by action the benefit of a contract between other parties. There must be either a new consideration or some prior right or claim against one of the contracting parties, by which he has a legal interest in the performance of the agreement."

In *Wheat* v. *Rice* (97 N. Y. 296), one Stotenburgh sold to the plaintiffs an undivided fourth of certain property, and in consideration thereof the plaintiffs agreed to pay a sum of money and "to assume and pay one-quarter of the present incumbrance on the property" and one-quarter of all the indebtedness of the firm of Stotenburgh, Root & Co., of which the said Isaac Stotenburgh was

FIRST DEPARTMENT, JULY, 1904. [Vol. 96.

a member, as the same became due and payable. It was held that no creditor of Stotenburgh could maintain an action to recover the amount of the indebtedness, as there was no promise made to pay any single one of such creditors, or for the benefit of any one of them.

It is evident, therefore, that this covenant with the city by which the defendant covenanted at his own expense to make good any damage that should in the course of the construction of the rapid transit railroad be done to the foundations, walls or other parts of adjacent buildings or structures, is not an obligation that can be enforced by this plaintiff under the exception to the general rule established by *Lawrence* v. *Fox* (*supra*) and the other cases based upon that decision; for here there is no covenant to pay to the property owners any sum of money and the covenant is not one by which the defendant undertakes to discharge any legal or equitable obligation of the city to the owners of property abutting on the streets through which this railway was constructed.

There is another class of cases, however, upon which the plaintiff relies to maintain this action illustrated by *Little* v. *Banks* (85 N. Y. 258). In that case the defendant was a law book publisher who entered into a contract with the State by which he was to publish and sell the reports of the New York Court of Appeals. The contract provided that the defendant should at all times keep the volumes published for sale at retail at a price named, in one or more law book stores in the city of Albany and the city of New York, and it provided that " should any other law book seller in either of said cities apply to purchase any of said volumes, the same shall be supplied to such law book seller upon application," and that for a failure on the part of the defendant " to keep on sale, furnish and deliver the aforesaid volumes, or any of them, at the price and as hereinabove provided " the defendant " shall forfeit and pay  *  *  * the sum of $100 hereby fixed and agreed upon not as a penalty, but as the liquidated damages suffered by the person or persons aggrieved thereby, the same to be sued for and recovered by the person or persons so aggrieved." It appeared that the plaintiffs applied on six different occasions for copies of some of the volumes published at the book store of the defendant, which the defendant refused to furnish, and the plaintiffs brought an action for six different sums

of $100 each by reason of such refusal. Judge MILLER, in delivering the opinion of the court, said : " The effect of the contract was that, in consideration of doing the work, the defendant would sell and deliver the books as provided to the persons who were entitled thereto, and if he failed to do so, as required, when demanded, he would pay to the person injured the damages." The ground of the liability of the defendant is said to be that " contractors with the State, who assume for a consideration received from the sovereign power by covenant, express or implied, to do certain things are liable, in case of neglect to perform such covenant to a private action at the suit of the party injured by such neglect, and such contract inures to the benefit of the individual who is interested in its performance," and it was held that this principle, without invoking the rule established in *Lawrence* v. *Fox* (*supra*), was applicable to a contract of the description of the one in controversy where the officers enter into it for the advantage and welfare of the public, and where such a provision constitutes a material portion of the agreement which is essential to carry it into effect.

It will be seen that, in this case, the liability of the defendant is placed, not upon the principle which authorizes a person not a party to an agreement to enforce a covenant in the agreement for his benefit, but upon the distinctly different proposition that where an individual by contract with the State assumes to perform a duty beneficial to the public, and fails to perform that duty, any one of the public injured by a failure to perform the obligation entered into with the State is entitled to maintain an action to recover the damages caused by a breach of the obligation assumed in the contract with the State — a position which is essentially different from a right to enforce such a covenant as is here in question. In this contract this defendant agreed that the plans, specifications and contract were sufficient, when properly carried out, to build this road without injury to abutting property ; and he covenanted that he would, at his own expense, make good any damage that should in the course of construction be done to such abutting property.

If this cause of action was based upon the fact that these plans, specifications and contract were such that doing the work without fault or negligence on the part of the contractor would cause injury to

abutting property, and that the defendant or his sub-contractor had, while carrying out that contract according to the plans and specifications, occasioned injury to abutting property, a different case would be presented; but there is no such allegation in this complaint. On the contrary, it is alleged that the injury for which the plaintiff seeks to recover was caused by the negligent or improper performance of the contract by a sub-contractor, and not by a proper and careful construction according to the provisions of the contract and the plans and specifications. There was no duty to the public which was assumed by the defendant, the non-performance of which by the defendant has caused the plaintiff injury. It is the neglect or failure to perform a sub-contract by a sub-contractor of which the plaintiff complains; and there is nothing in the allegations of this complaint that brings this case within the principle established in *Little* v. *Banks* (*supra*). Here, so far as appears, the defendant has complied with his contract, and if the plaintiff's property has been injured through the negligence of sub-contractors it is those whose negligent acts have injured the plaintiff who are responsible to him.

There are several cases in the Appellate Division which follow *Little* v. *Banks*, relied on by the plaintiff. The first is *Cook* v. *Dean* (11 App. Div. 123), decided in the second department in December, 1896. In that case the plaintiff's intestate met his death by the falling of a temporary drawbridge over a creek separating Kings and Queens counties. The defendant had entered into a contract with the supervisors of Kings and Queens counties for the construction of a permanent bridge over the creek, and also for the construction of a temporary structure, which fell, the latter to be used by the general public until the new bridge should be completed; and it was there provided that the defendant "shall and hereby agrees to keep the above specified structure in good repair during the progress of the work on the main structure and until directed to remove the same by the engineer." The defendant made a sub-contract for the erection of the temporary structure, and entered upon and assumed the duty of keeping it in repair after it was erected. And it was held that, under these circumstances, the defendant became liable for a neglect of duty in connection with the obligation assumed, and such neglect created a right of action in favor of the person who suffered injury therefrom in consequence

thereof. This case has no bearing upon the right of the plaintiff to enforce a covenant in this agreement. There, it was a neglect to perform a duty which had been assumed by the defendant in his contract with the supervisors of the counties whose duty it was to provide a bridge for the public and to keep it in repair; and the contract between the defendant and the supervisors proved the fact that the defendant had assumed this duty to the public, a violation of which caused the injury for which the plaintiff was allowed to recover. The action was not brought to enforce a covenant made by the defendant to pay a sum of money to the plaintiff, contained in a contract between the defendant and the supervisors, but to recover for the negligent performance of a duty which the defendant had by its contract assumed to perform.

The case of *Glens Falls Gas Light Co.* v. *Van Vranken* (11 App. Div. 420) is also relied upon by the plaintiff. In that case the plaintiff maintained a system of gas pipes to supply gas in the village of Glens Falls, and the village authorities made a written contract with the defendants by which the defendants agreed to construct in the village a system of sewers, a portion of which was to be constructed in streets through which the plaintiff's gas pipes were placed. In the course of the construction of these sewers, the plaintiff's gas pipes were broken and injured in many places, and thereby caused the plaintiff damage. This contract contained a provision that the contractors were to make all provisions necessary to maintain and protect gas pipes, and to repair all damage done to sub-structures, and to be responsible for all damage that might be done to persons or property in the blasting of rock, and if injury was caused, the cost and repair were to be paid by the contractors; and it was held that the defendants were liable. The question before the court was stated to be, " Can the defendants shield themselves under this contract and injure plaintiff's property, and still say that they are not liable under its provisions, which were evidently made for the benefit of the plaintiff and those in a like position? Can they do acts which without the contract would be wrongful, and with it are authorized only on condition that they compensate the parties injured? Is their justification complete and available as a defense until they perform as the instrument of justification requires?" The statement of this proposition decided by the court shows clearly that the decision is

not an authority for holding the defendant in this action. There, it was the contractors who did the work that caused the injury, and for the injury that they caused they were held responsible. In this case, the damage was caused, not by the defendant, but by sub-contractors in the negligent performance of their work, and no act of the defendant is alleged that caused the injury.

In all of the cases that have been cited the defendant was held liable because it was his acts of negligence in the performance of a contract with the State or municipal authorities that caused the injury. In none of the cases does the liability rest solely upon a covenant by which the defendant agreed to be responsible for the negligence of others. An allegation that the defendant had violated his contract with the city, or had been negligent in its performance and that the injury to the plaintiff resulted therefrom — the essential fact upon which, in the cases to which attention has been called, the liability of the defendant was based — is absent in this case. (See *Conrad* v. *Trustees of Village of Ithaca*, 16 N. Y. 158; *Robinson* v. *Chamberlain*, 34 id. 389; *Willy* v. *Mulledy*, 78 id. 310.)

That the defendant is not responsible for the negligent acts of his sub-contractor is settled. (*Blake* v. *Ferris*, 5 N. Y. 48; *Booth* v. *Rome, W. & O. T. R. R. Co.*, 140 id. 267; *French* v. *Vix*, 143 id. 90.) In *French* v. *Vix* it was sought to hold the defendant responsible upon a clause in his contract with the owner of property by which he agreed "to become answerable and accountable for any damages that may be done to the property or person of any neighbor or passerby during the performance of said work." The injury, to recover for which the action was brought, was caused by the negligence of sub-contractors in blasting, which was a part of the work that the defendant had agreed to do; and the opinion in that case, speaking of the case of *Booth* v. *Rome, W. & O. T. R. R. Co.* (*supra*), says: "We see no reason for reconsidering the points decided in that case, and it must be regarded as a precise authority for the respondents unless they can be held liable for these damages by virtue of the clause in their contract above quoted; and whatever view may be taken of that clause, it cannot impose liability upon them. If it be treated as a contract of indemnity, it could impose no liability because, Henry not being liable, there was nothing to

call the indemnity into operation. The indemnitors could not be liable unless the party to be indemnified became liable. If it be claimed that this clause in the contract was intended for the benefit of the plaintiff, and that, therefore, she can enforce it, there are two answers to such a claim. It cannot be said that it was inserted for her benefit. The parties did not intend to provide indemnity against damages for which they were in no way liable. The sole purpose of the clause was the indemnity of Henry, and he alone, or some one in his right, could in a proper case enforce it. But even if it could be held that the contract contained in this clause was intended for the plaintiff's benefit, she was not a party to the contract nor in privity therewith, and as to her it was wholly without consideration. As Henry could not, under any circumstances, become liable for these damages, either on the ground of careless blasting or of inevitable damage, the case of *Vrooman* v. *Turner* (69 N. Y. 280) is an authority for holding that the plaintiff cannot sue upon and enforce the contract."

I can see no reason why this last statement as the law of this State is not controlling, and the judgment must be affirmed, with costs, with leave to plaintiff to amend complaint upon payment of costs in this court and in the court below.

O'BRIEN, McLAUGHLIN and HATCH, JJ., concurred; PATTERSON, J., dissented.

HATCH, J. (concurring):

In considering the proper construction of the contract relied upon in the complaint, it is well to understand, in the first instance, what the precise obligation of the city of New York was in connection with the construction of this work. The tunnel as completed is the property of the city, made so by the provisions of the statute and confirmed by the courts in construction of the same. (*Matter of McDonald*, 80 App. Div. 210; affd., 175 N. Y. 470.) As the city did not construct the work through its agents and servants, but contracted for its performance, it could not be made liable for negligence in the manner in which the work was performed. The obligation, however, rested upon it to exercise care in providing for proper plans and specifications and a contract in fulfillment of the same which could be carried out without inflicting injury upon the

walls of abutting structures. If plans were adopted in the carrying out of which a nuisance would be created, for the adoption of such plans the city would be liable, whether the work was performed by an independent contractor or by itself. (*Mayor, etc., of N. Y.* v. *Bailey*, 2 Den. 433.) This doctrine was recognized in *Maxmilian* v. *Mayor* (62 N. Y. 160), and also in *King* v. *N. Y. C. & H. R. R. R. Co.* (66 id. 181). If the city adopted plans and specifications which would necessarily inflict injury upon the abutting property owner, when it might, by the exercise of care, have provided plans under which the work could have been performed without injury to adjoining property, it could be held liable for negligence. This obligation upon the part of the city is primary, and when the authority is delegated it rests upon the doctrine of *respondeat superior,* which, as was said by MULLETT, J., in *Blake* v. *Ferris* (5 N. Y. 48) " is founded on the power which the superior has a right to exercise, and which, for the prevention of injuries to third persons, he is bound to exercise over the acts of his subordinates." The city in this case had the power to adopt the plans by which the work should be done, and in the exercise of that power it also had authority to adopt such plans as would prevent injuries to third persons and thus prevent any injury in doing the work if the plans were properly carried out; consequently the doctrine precisely applies and has been recognized in many cases. (*Deming* v. *Terminal Railway of Buffalo*, 169 N. Y. 1; *Ryder* v. *Thomas*, 13 Hun, 296; *McCafferty* v. *S. D. & P. M. R. R. Co.*, 61 N. Y. 178; *Lockwood* v. *Mayor*, 2 Hilt. 66.) The obligation, therefore, resting upon the city was that it should not adopt plans for the performance of the work which in the proper carrying out would produce a nuisance or necessarily inflict injury upon adjoining property. So, likewise, the city was charged with the obligation of maintaining its streets and public places, through which the work progressed, in a reasonably safe condition, and to properly guard all excavations and obstructions therein in order that accidents might be prevented. This duty, as it itself authorized the opening and obstruction of the streets and public places, it could not delegate, so as to relieve itself from liability, to an independent contractor. (*Storrs* v. *City of Utica*, 17 N. Y. 104.) The city, therefore, necessarily incurred, in connection

with the performance of this work, a contingent liability from which it could not shelter itself behind the acts of an independent contractor; consequently, it was in a position where, for the purpose of safeguarding its interests and to protect itself from liability, it could demand that the contractor, by the terms of the contract, should provide in full measure indemnity for that part in which the city might be liable. To meet this situation the contractor, by this contract, covenants that the plans and specifications, if properly carried out, will not involve any danger to the foundations, walls or other parts of adjacent buildings or structures, and he further covenants that during the performance of the work he will maintain the streets and other public places in a reasonably safe condition, and indemnify and save the city harmless from any liability arising therefrom, and will make good any damage that shall arise in the course of construction. The further provision of the contract is: " The contractor shall be responsible for all damage which may be done to abutting property or buildings or structures thereon by the method in which the construction hereunder shall be done, but not including in such damage, any damage necessarily arising from proper construction, pursuant to this contract, or the reasonable use, occupation or obstruction of the streets thereby."

It is claimed that this is a separate, independent provision of the contract, disassociated from any duty resting upon the city, and having for its sole purpose the indemnity of abutting property owners, and that the liability of the contractor is imposed by its terms to the full extent of providing indemnity to the property owner for any act of negligence either upon his part or upon the part of an independent contractor committed in any manner during the performance of the work. If such be its construction, it is manifest that the obligation imposed is onerous to the extent of being ruinous, for in considering the question the court cannot shut its eyes to the character of the work and its magnitude. It is common knowledge that great doubt existed as to whether a tunnel of this size could be constructed without entailing a destruction of the streets, undermining buildings and otherwise inflicting great damage in the process. Such being the fact, it is manifest that if, in addition to liability for such damage as is necessarily incurred, there is added liability for all acts of negligence no matter by whom committed, language

imposing upon the contractor a burden of such magnitude ought to be so clear and explicit in its provisions as to leave no room for doubt as to the intent upon the part of the city to impose and the contractor to assume such burden. It is undisputable that for damage inflicted in the process of the work which did not arise out of defects in the plans the city would not be liable. (*Bates* v. *Holbrook,* 171 N. Y. 460, 468.) No obligation, therefore, rested upon the city to indemnify abutting property owners for any loss or damage occasioned by the proper performance of the work. It is equally well settled that in the prosecution of the work the contractor would not be liable for negligence in performance by an independent contractor when, if the work was properly performed, no damage would have resulted. (*McCafferty* v. *S. D. & P. M. R. R. Co. supra; Miller* v. *N. Y., L. & W. R. R. Co.,* 125 N. Y. 118.)

It is claimed, however, that it was competent for the city to exact indemnity from the contractor for the property owner, and that the obligation having been assumed by the contractor, there is such privity of relation between the owner and the contractor as will permit an enforcement of the covenant if there be a breach of its conditions; that under such circumstances the doctrine of *respondeat superior* does not apply, but liability is rested solely upon the terms of the contract and its breach. It is evident that a contract which thus radically changes the law in every essential relation existing between such parties ought to be expressed in clear and certain terms. There are no words in this contract which in express terms make this provision apply to third parties or to the owners of abutting property. The language laid hold of is that the contractor shall be responsible for all damage inflicted "by the method in which the construction hereunder shall be done." It is quite possible to satisfy this language by limiting the liability imposed thereby to such method used in construction as is required by the terms of the plans and specifications and the contract in furtherance thereof. If, however, the language be entitled to a broader construction than this, there are no words which extend the language to embrace anything beyond personal performance by the contractor. It falls short in language of imposing liability upon the contractor for acts of negligence by an independent contractor com-

mitted in the performance of his contract. The entire language of this clause may be given full force by construing it as providing for indemnity to an abutting property owner for acts of negligence committed in the method and manner of performing the work. While it is true that such construction would not add to the liability imposed upon the contractor for a negligent act of his own, yet in view of the very meagre statement from which is sought to to be levied such an enormous responsibility it is quite persuasive in leading the mind to the conclusion that the purpose of the parties was simply to stipulate, and make certain, liability for negligent acts by the person committing the same in carrying out the contract. It ought not to receive a more enlarged construction in view of the principles of law which apply in such relation, in the absence of express words making the contractor liable for the acts of independent contractors over whom he could have no control in the method and manner of doing the work, beyond the terms of the contract, nor in the selection of instruments by which the work is done.

Aside from this question, however, it is plainly evident that the primary intention of both parties to the contract was to furnish indemnity to the city. If we give full force and a literal interpretation to this so-called independent provision we shall easily reach the conclusion that the contractor has been relieved from the primary obligation which the city sought to impose and that instead of standing as an indemnitor to the city he is relieved from liability therefor. After assuming responsibility for damages incurred by the method of construction the clause proceeds with this exception : "But not including in such damage any damage necessarily arising from proper construction pursuant to this contract or the reasonable use, occupation or obstruction of the streets thereby." We have already observed that the first clauses of the contract averred in the complaint imposed the absolute obligation and duty upon the contractor as a guarantor of the perfect character of the plans and the assumption of liability upon his part for the care of the streets and public places. If force is to be given to the quoted provision then it necessarily follows that if damage resulted to the abutting property owner from a proper performance of the plans and arise from a defect therein the language used relieves the contractor from liability therefor. It then becomes a pertinent subject of inquiry upon

whom does the liability rest. Confessedly, if the plans were defective, liability for injury sustained arising out of proper performance becomes an obligation of the city; so that the necessary result is, if this construction obtain, that the contractor is relieved from liability and the city bears the burden. There can be no escape from this conclusion based upon such construction. Manifestly, the parties to this contract never contemplated such a result. It becomes, therefore, necessary to construe the provisions of this contract relating to these subjects together. So construed, it seems clear that the primary purpose was to indemnify the city against loss and damage for matters in respect to which it owed a duty; that the language of the last clause of the so-called independent provision must yield to the explicit provisions of the first clauses, and that the part of the contract set out in the complaint should be so construed as to carry out the primary purpose and intent of the parties by imposing upon the contractor the obligation and duty which rested upon the city and give to the property owner the right to indemnity for acts of negligence occasioning injury against persons inflicting the same. Unless so construed, the necessary result is to relieve the contractor from liability to the city and make him only liable to the abutting property owner for negligence. In this respect the city owed no duty which it was called upon to protect, but it did owe a duty for which it sought indemnity, and no construction should be given to these clauses of the contract which works a destruction of such indemnity provision. So far as the contractor has assumed the duty resting upon the city he is liable to persons suffering injury on account thereof within the doctrine announced in *Cook* v. *Dean* (11 App. Div. 123; affd. on opinion below, 160 N. Y. 660) and many other cases. These cases all proceed upon the theory that where the obligor assumes the discharge of a public duty which devolved upon the corporation to perform, a party suffering injury may resort in the first instance to the person who has assumed the duty, and he stands in such privity of relation thereto as enables him to maintain the action. These cases are without application, however, for the reason that the plaintiff does not found his cause of action upon any duty resting upon the city. This is evident from the averments of his complaint, which clearly show that his cause of action arises out of the manner in which a sub-contractor

carried on the blasting of rock in making the excavation for the tunnel. It rests, therefore, upon a negligent act of the sub-contractor. For that act, the city was not responsible and the plaintiff recognizes such fact by not making the city a party to his action. The duty and obligation assumed by the terms of the contract embraced only such matter as that for which the city would have been liable, and as no liability is shown to have arisen therefrom, so far as the cause of action now set out is concerned, no liability attached to the contractor by virtue of the terms of his contract, because he has not assumed such obligation and duty and it never rested upon the city.

I concur, therefore, with Mr. Justice INGRAHAM in the opinion which he has delivered in this case.

The judgment should be affirmed, with costs, with leave to the plaintiff to plead over within twenty days on the payment of costs in this court and in the court below.

O'BRIEN and McLAUGHLIN, JJ., concurred.

PATTERSON, J. (dissenting):

Mr. Justice HATCH in his opinion in this case has fairly stated what, to my mind, is the determinant consideration therein, and that is, whether the provision of the contract that the contractor shall be responsible for all damages which may be done to abutting property or buildings or structures by the method in which the construction shall be done, not including damage necessarily arising from proper construction or reasonable use, occupation or obstruction of the streets, is a separate and independent provision dissociated from any duty resting upon the city and having for its sole purpose the security and idemnity of abutting property owners. If this is not an independent provision, then the views expressed by Mr. Justice HATCH are conclusive; but in my judgment it is independent and provides for conditions and situations entirely different from any others contained in the contract relating solely to the indemnity of the city. It seems to me that the provision in question is one which the contractor entered into for the benefit of third parties as one of the terms and conditions upon which the rapid transit commissioners awarded the contract to him. He was contracting for himself, and the question is not one of the relation of inde-

pendent contractors to the work, nor of trespasses committed by them; for the defendant is the principal contractor, and all the obligations of that contract devolved upon him. As I look at it, upon all the facts set forth in the complaint in this action, it is not a question of the liability of the city at all, but of the liability assumed by the defendant as a condition of his contract, not in indemnification of the city, but upon an original undertaking of his pursuant to a requirement of the rapid transit commissioners, who had the right to exact it from him for the protection of the owners of property abutting upon the line of the subway. Entertaining these views, I am unable to concur in the conclusion reached by my associates.

Judgment affirmed, with costs, with leave to plaintiff to plead over on payment of costs in this court and in the court below.