ROCHESTER DRY GOODS CO. v. FAHY.

(Supreme Court, Appellate. Division, Fourth Department. March 7, 1906.)

1. CONTRACTS—ACTION FOR BREACH—PLEADING—EVIDENCE ADMISSIBLE THERE-
UNDER.

Where a corporation sued on a contract made by a stockholder with
a purchaser of certain stock, whereby the stockholder guarantied that
certain accounts receivable would be paid, and agreed to reimburse the
corporation if a certain claim should be enforced against it, on the theory
that the contract was made for its benefit, evidence of the assignment of
the contract to the corporation by the purchaser was inadmissible.

2. SAME—ENFORCEMENT BY THIRD PARTY.

A contract made by a stockholder of a corporation with a purchaser
of certain stock, whereby the stockholder guarantied that certain accounts
receivable would be paid, and agreed to reimburse the corporation if a
certain claim should be ·enforced against it, could not be enforced by the
corporation.

[Ed. Note.—For cases in point, see vol. 11, Cent. **Dig.** Contracts, §§
798–807.]

Action by the Rochester Dry Goods Company against Louise K.
Fahy.

Motion by plaintiff for a new trial upon exceptions taken at the trial,
and ordered heard at this court in the first instance. At the close of
the plaintiff's evidence a nonsuit was directed, to which the plaintiff
excepted, and presents the only serious question for determination upon
this review. Exceptions overruled, motion for new trial. denied, and
judgment of nonsuit.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
NASH, and KRUSE, JJ.

Henry Adsit Bull, for plaintiff.
George A. Carnahan, for defendant.

KRUSE, J. The plaintiff is a domestic corporation, whose capital
stock consists of 400 shares, of the nominal or par value of $100 each.
In February, 1903, it was engaged in the mercantile business in the city
of Rochester. The defendant owned a controlling interest in the cor-
poration at that time, and entered into an agreement with one John U.
Fraley, by which she sold him sufficient of her shares of stock to
give the control to Fraley. The first contract was made between the
defendant and Fraley February 9, 1903, and is preliminary to the suc-
ceeding one, made February 14, 1903. The name of the plaintiff at that
time was the Fahy-Schantz Dry Goods Company, and later it was
changed to the Rochester Dry Goods Company. The contracts refer to
the plaintiff by its former name. It is evident from these two contracts
that Fraley regarded it important to know the amount of the accounts
receivable by the plaintiff, as well as the extent of its liabilities, as bear-
ing upon the value of the shares of the capital stock he was about to ac-
quire from the defendant; so that in the agreement of February 14,
1903, which was a final consummation of the negotiations between the
defendant and Fraley, the following provision was imbodied therein:

"The said Louise K. Fahy does hereby guaranty that the accounts receivable
of the Fahy-Schantz Dry Goods Company will be paid to the amount of

twenty-five thousand seven hundred and forty dollars and fifty-seven cents ($25,740.57), on or before March 1, 1904, and does hereby further guaranty to the said John U. Fraley that a certain indebtedness of the Fahy-Schantz Dry Goods Company, said to be outstanding on account of contracts and obligations entered into by said company relating to repairs and improvements on certain premises in the city of Buffalo formerly occupied by the Knowles & Gardner Company, and said to amount to between five and six thousand dollars, if the same are legal and enforceable obligations, or shall be charged in any way to the Fahy-Schantz Dry Goods Company, then she, the said Louise K. Fahy, will pay the amount thereof to the said Fahy-Schantz Dry Goods Company or to the said John U. Fraley; and, as a security for the performance of this obligation, the said Louise K. Fahy does hereby agree to pledge her remaining capital stock in said Fahy-Schantz Dry Goods Company, or to deduct the amount of the said accounts receivable which shall prove to be bad or uncollectible on or before March 1, 1904, and the amount of said Knowles & Gardner claim, if any, from the value which shall be placed upon her remaining shares of capital stock in the Fahy-Schantz Dry Goods Company under the appraisal thereof, and covered by the option to purchase the same under said agreement of February 9, 1903."

There are other provisions in these contracts relating to the management and carrying on of the business, including the execution and delivery of a lease of the premises then occupied by the company. It was admitted on the trial that the accounts receivable remaining unpaid amounted to the sum of $8.938.86, and that there had been paid by the plaintiff on the Knowles & Gardner obligations the sum of $4,843.27, of which the defendant paid March 2, 1903, the sum of $2,000, and this action was brought by the plaintiff to recover the amount unpaid on the accounts receivable and the balance unpaid on the Knowles & Gardner obligation; it being contended by the plaintiff that it was entitled to recover under the provisions contained in this contract of February 14, 1903 above referred to, and that the promise therein contained relating to these two claims inured directly to its benefit, and that an action was maintainable thereon by it without any assignment thereof, or the right thereunder, from Fraley to it, although the plaintiff claimed upon the trial that it also had an assignment from Fraley of his right and claim thereunder, and offered to make proof thereof, which was excluded. The trial court excluded the proof, upon the ground that the assignment had not been pleaded, and the action was not brought upon any such theory; but suggested an amendment to the pleadings, which suggestion was not taken by the plaintiff, and its counsel stated that he did not care to take chances on any further amendment of the pleadings, but asked to introduce the evidence upon the pleadings as they then stood, stating, further, that the plaintiff was not suing on the assignment, but in its own right, and the assignment was in confirmation of that. Thereupon a motion for a nonsuit was made, which was granted; plaintiff excepting thereto, as well as to the refusal to admit the assignment in evidence. The exceptions were ordered to be heard here in the first instance, and the plaintiff now asks that these exceptions be sustained, and that a new trial be ordered.

We think that the learned trial court correctly disposed of this case. As regards the exception to the refusal to admit the assignment from Fraley, it is sufficient to say that the complaint is not based upon an assigned cause of action, and the plaintiff does not seek now to recover upon any such theory; and that leads us directly to the only question which requires serious consideration.

Taking the most favorable view of the case in all of its aspects, and giving the most favorable inferences to the plaintiff permissible from the evidence in this case, as we are required to do upon this review, the plaintiff having been nonsuited at the trial, we are unable to see any ground upon which this action can be successfully maintained. The plaintiff contends that the promise contained in this provision of the contract was made for the benefit of the plaintiff; that, although it was not nominally a party to the contract between the defendant and Fraley in the first instance, yet, when it ratified and adopted the contract, which it claims to have done, it acquired a complete and irrevocable right therein, enabling it to maintain, in its own name and right, an action upon this promise.

The plaintiff invokes the doctrine of Lawrence v. Fox, 20 N. Y. 268, to uphold its claim, and further contends that, irrespective of the rule laid down in that case, this action is maintainable; seeking to bring itself within that class of cases where one person contracts with another, assuming to act for a third person, but without authority, permitting the latter to ratify and adopt such contracts, as in the case of contracts made by promotors in contemplation and on behalf of corporations to be formed. In such cases it has been held the corporation when organized may adopt the contract, and subject itself to liability thereunder. Mesinger v. Mesinger B. S. Co., 44 App. Div. 26, 60 N. Y. Supp. 431. The difficulty with this position is that Fraley did not act, nor did he assume to act, for the plaintiff. He acted for himself, and the contracts were made for his own benefit. There was no obligation attempted to be imposed upon the plaintiff, and it never assumed any. This contract was not made for the benefit of the plaintiff, as I view it; this guaranty and these promises were made for the benefit of Fraley. He was interested in the value of the shares of stock which he was acquiring, not the plaintiff; the plaintiff was not interested in any way in the transaction. It is true that the payment by the defendant to the plaintiff of these moneys would, to that extent, have increased its assets, but the only purpose of this was to make the stock as valuable as the defendant claimed it to be, and to indemnify and make whole Fraley for any loss. Can it be contended that differences arising out of this contract between Fraley and the defendant could not have been adjusted by them without the intervention of the plaintiff, or that this contract could not have been changed or modified by Fraley and the defendant, or that Fraley could not have released and discharged the defendant from any claims thereunder? And yet, if plaintiff is right, this could not have been done.

It is, however, contended with great earnestness that the doctrine of Lawrence v. Fox applies to this case. It is needless to go into the history of the rule of that case, or discuss the many cases called to our attention where the rule has been applied or rejected. Broadly, but not precisely, stated, it is a binding promise made by one to another for the benefit of a third person. To be enforceable, however, by such third person it must not only appear that the promise shall be for the benefit of the third person, but its direct object must have been to benefit him. A mere incidental benefit is not sufficient, and, besides, he must have some legal or equitable interest in its performance, or, as Judge Ingraham states in Haefelin v. McDonald, at page 222 of 96 App. Div., and at page 400 of 89 N. Y. Supp.:

"There must be a legal or equitable obligation or duty on the part of the promisee to the third party, for whose benefit the promise was made. That it would be a benefit to the promisee to have such a covenant enforced, or that there was a moral obligation of the promisee to the third party, for whose benefit the promise was made, is not sufficient to allow the third party to maintain an action to enforce the promise."

To the same effect is Hurd v. Wing, 76 App. Div. 506, 508, 78 N. Y. Supp. 574; the theory of the cases being, as is said in American and English Encyclopedia (7 Am. & Eng. Ency. [2d Ed.] 107), that such an obligation so connects him with the contract as to be a substitute for any privity with the promisor.

The rule was elaborately amplified and clearly stated in Vrooman v. Turner, 69 N. Y. 280, 25 Am. Rep. 195, and quoted as late as the present year in the Court of Appeals (Pond v. New Rochelle Water Works Co., 183 N. Y. 330, at page 336, 76 N. E. 211, at page 213, and I cannot forbear quoting it here:

"To give a third party, who may derive a benefit from the performance of the promise, an action, there must be, first, an intent by the promisee to secure some benefit to the third party; and, second, some privity between the two—the promisee and the party to be benefited—and some obligation or duty owing from the former to the latter, which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him personally. It is true there need be no privity between the promisor and the party claiming the benefit of the undertaking, neither is it necessary that the latter should be privy to the consideration of the promise; but it does not follow that a mere volunteer can avail himself of it. A legal obligation or duty of the promisee to him will so connect him with the transaction as to be a substitute for any privity with the promisor, or the consideration of the promise; the obligation of the promisee furnishing an evidence of the intent of the latter to benefit him, and creating a privity by substitution with the promisor. A mere stranger cannot intervene, and claim by action the benefit of a contract between other parties. There must be either a new consideration, or some prior right or claim against one of the contracting parties, by which he has a legal interest in the performance of the agreement."

The Pond Case and the case of Buchanan v. Tilden, 158 N. Y. 109, 52 N. E. 724, 44 L. R. A. 170, 10 Am. St. Rep. 454, are good examples of where the rule has been applied; while Embler v. Hartford S. B. I. & Ins. Co., 158 N. Y. 431, 436, 53 N. E. 212, 44 L. R. A. 512, and Sullivan v. Sullivan, 161 N. Y. 554, 557, 56 N. E. 116, are fair illustrations of where the rule is inapplicable.

This case is entirely barren of any evidence tending to prove that there was any obligation resting upon Fraley to the plaintiff at the time when this contract was made between Fraley and the defendant, or at any time since. Fraley was under no obligation to plaintiff to make up any deficiency in the assets, or upon this claim, which appears to have been owing by the plaintiff, and it is not suggested on behalf of the plaintiff that there was any liability or claim of any kind against Fraley. If the defendant had kept his promise, and paid this money to the plaintiff, as he had a right to do, it would not have released, discharged, or affected any claim owing by Fraley to the plaintiff; for, so far as the evidence discloses, there was none. It was as to the plaintiff a mere naked promise, without consideration moving from it, and to which it was not even a party. As has already been suggested, the only purpose of this promise by the defendant to Fraley

was to protect Fraley, and make his stock as valuable as the defendant claimed it to be. Whatever loss or damage has resulted from a breach of this promise the plaintiff may recover against the defendant, if it has succeeded to the rights of Fraley under this assignment or otherwise; but I am persuaded that, independent thereof, and standing upon this promise alone, without a transfer of the claim of Fraley to it, the plaintiff is not entitled to recover.

Plaintiff's exceptions must therefore be overruled, and the motion for a new trial denied, and judgment directed upon the nonsuit, with costs.

Plaintiff's exceptions overruled, motion for a new trial denied, and judgment directed upon the nonsuit, with costs. All concur.