(52 Misc. Rep. 364.)

### DILCHER v. NELLANY.

(Supreme Court, Trial Term, Erie County. January 20, 1907.)

**1. TRIAL—MOTION BY BOTH PARTIES FOR DIRECTION OF VERDICT—CONSIDERATION OF EVIDENCE.**

Where each party requests a direction of a verdict in his favor, the court must exercise the functions of a jury in determining questions of fact and in drawing inferences warranted by the facts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 400.]

**2.** CONTRACTS—CONSTRUCTION—AGREEMENT FOR BENEFIT OF THIRD PERSON—CONSIDERATION.

It is not essential that a consideration for an agreement should move from a third person to make the agreement one made for his benefit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 798–805.]

**3.** EVIDENCE—PAROL EVIDENCE VARYING WRITING—RECITAL OF CONSIDERATION—PROOF OF ADDITIONAL CONSIDERATION.

The recital in an agreement of a particular consideration does not preclude proof of an additional one.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 1922.]

**4.** CONTRACTS—CONSTRUCTON—RIGHTS ACQUIRED BY THIRD PERSON.

A bond executed by an obligor and a co-obligor was secured by a mortgage executed by the obligor alone. The obligee released the co-obligor, with the consent of the obligor. Previous to the release the co-obligor entered into an agreement with the obligor which stipulated that, in consideration of the consent of the obligor to the release of the co-obligor from liability on the bond, the co-obligor would, in the event of the foreclosure of the mortgage and of a deficiency judgment, pay a half of the deficiency judgment. *Held*, that the agreement was not only made for the benefit of the obligee, but he had a legal or equitable interest in the performance thereof.

**5.** INDEMNITY—CONTRACTS OF INDEMNITY—CONSTRUCTION—OPERATION.

An agreement between an obligor and co-obligor in a bond which stipulates that, in consideration of the consent of the obligor to the release of the co-obligor from personal liability on the bond, the co-obligor would. in the event of the foreclosure of the mortgage executed by the obligor to secure the bond and of a deficiency judgment, pay half of the deficiency judgment, is an agreement to pay a debt owing or that may become due and owing from the obligor to the obligee, authorizing the obligor to maintain an action thereon without having first paid a deficiency judgment.

**6.** CONTRACTS—CONSTRUCTION—RIGHTS ACQUIRED BY THIRD PERSONS—ACTION BY THIRD PERSON.

A bond executed by an obligor and a co-obligor was secured by a mortgage executed by the obligor alone. The obligee released the co-obligor. with the consent of the obligor. Previous to the release the co-obligor entered into an agreement under seal with the obligor, which stipulated that, in consideration of the consent of the obligor to the release of the co-obligor from liability on the bond, the co-obligor would, in the event of the foreclosure of the mortgage and of a deficiency judgment, pay a half of the deficiency judgment. The agreement was delivered to the obligee. *Held*, that the agreement was a substitute for the obligation created by the bond, and was for the benefit of the obligee, authorizing him to sue thereon for his use in the name of the obligor.

**7.** PLEADING—AMENDMENT—CHANGE OF CAUSE OF ACTION.

An action on an agreement made for the benefit of a third person was brought in the name of one of the parties thereto. The action was instituted by the third person. *Held*, that an amendment to the complaint so as to indicate that the action was for the use of the third person was proper as the amendment did not change the cause of action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, § 689.]

Action by Jacob Dilcher against Michael Nellany. Verdict directed for plaintiff for the use of George Wadsworth.

Wadsworth, Blackmon & Wadsworth (Harlan J. Swift, of counsel), for plaintiff.

Moot, Sprague, Brownell & Marcy, for defendant.

MARCUS, J.   Prior to March, 1900, George Wadsworth, attorney of record for the plaintiff in this suit, was the owner and holder of a joint and several bond, then past due, executed by the plaintiff, the defendant, and Stanton and Fleming, which said bond was secured by a mortgage executed by the plaintiff alone.   On the 13th day of March, 1900, Wadsworth executed and delivered to defendant a release to him in substance as follows:

"For a good and valuable consideration to me in hand paid by the said Nellany * * * I do hereby release, exonerate and discharge him from any and all further duty, liability or obligation to me, under and by virtue of said bond. This release is made pursuant to the provisions of section 1942 of the Code of Civil Procedure, * * * and shall not affect or impair the liability or obligation of the other obligors in said bond named. It being the object and purpose hereof only to release the said Nellany and his personal liability for said debt * * * reserving to said Wadsworth his lien on said premises * * * as though the mortgage had been given without a bond."

At the end of the bond are the words, "I hereby consent and approve of the foregoing release," signed by the plaintiff and dated the same day.

On the day previous, viz., March 12, 1900, defendant entered into an agreement to and with plaintiff whereby it was stipulated that:

"In consideration of the consent of Jacob Dilcher to the release of Nellany from personal liability upon a bond executed with Dilcher and others, the said Nellany agrees to and with the said Dilcher that in the event of the foreclosure of the Wadsworth mortgage and of a deficiency judgment arising by reason of such foreclosure, the said Nellany, his heirs, executors, etc., will pay one-half of such deficiency judgment, and will save the said Dilcher harmless from the payment of such one-half of such deficiency judgment."

This agreement is under the hands and seals of the parties.   The mortgage having been foreclosed and a deficiency judgment entered against Dilcher, he brings this suit upon the said covenant.

The defendant alleges in his answer certain counterclaims against the plaintiff, consisting of certain judgments rendered subsequent to the execution of said agreement.   It appears that the defendant claims to be the owner of the cause of action sued upon by virtue of a certain assignment made by plaintiff to the Bank of Lancaster as collateral security for advances, and afterwards assigned to defendant with the plaintiff's consent.   These assignments were made subsequent to the institution of this suit.   It also appears that plaintiff executed a stipulation for the discontinuance of this suit, to which, however, his attorney, Mr. Wadsworth, refused his assent, and consequently no order has been entered upon it.   These matters are alleged in the supplemental answer, and judgment is demanded dismissing the complaint and for judgment on the counterclaims.

Mr. Wadsworth's contention is that he is the real party in interest, and, indeed, the sole one; that plaintiff has no beneficial right, title, or interest in the cause of action; that he was but a trustee to collect and turn over the moneys recovered to his cestui que trust, Wadsworth, to whom of legal right they belong.   Therefore he argues that the matters and things set up in the supplemental answer are of no validity or of any legal efficacy whatever as against his superior right to the cause of action, and that the complaint should be amended so as to

indicate, in its title and averments, that the action is prosecuted "for the use of George Wadsworth." Mr. Wadsworth' bases his contentions and arguments upon the doctrine of Lawrence v. Fox, 20 N. Y. 268, and kindred cases.

Defendant disputes the reasons and arguments advanced by the learned counsel, and earnestly contends that he, Mr. Wadsworth, is not a person for whose benefit a contract was made by the contracting parties, within the meaning or purview of the doctrine aforesaid, and that as such doctrine shall not be extended, but be limited in its application, it should not be applied in such a case as this. It is denied that Wadsworth has any legal or equitable right or title to the cause of action, nor any cognizable interest therein, except his attorney's lien, which, however, it is argued cannot be determined in this action. The legal relations and rights of the respective parties growing out of the transaction concerning the giving of the release and the execution of the covenant aforesaid must be determined upon the pleadings, the documentary evidence presented, and certain oral admissions made upon the trial, since neither party has deemed it either necessary or advisable to take the witness stand or to call any witness.

The following admissions were made upon the trial:

"Mr. Moot: I will make the admission in this form: Roesch undertook for Nellany and for Dilcher to negotiate an adjustment of this matter, and in bringing it about Roesch arranged the release between Wadsworth and Nellany and the indemnity agreement between Dilcher and Nellany; and, if Mr. Wadsworth says so, then I will admit, also, that Roesch brought this agreement from Nellany and Dilcher to Wadsworth. If that is Wadsworth's statement, I will consent to that.

"Mr. Swift: And that Wadsworth made the interlineations on this paper, gave it to Roesch, who proceeded with it to Nellany, and brought back the instrument with Nellany's initials, accepting and approving the interlineations, and delivered it to Wadsworth.

"Mr. Moot: I will admit that.

"Mr. Swift: And that then Wadsworth delivered to Roesch for Nellany the release. I will state now that the statements of Mr. Moot are accepted as the admission."

The complaint alleges that the defendant applied to Wadsworth to be released from the bond, but he refused to do so without plaintiff's consent, and that thereupon defendant applied to plaintiff for such consent, "and in consideration of said promise and agreement the plaintiff did consent to such release, and said Wadsworth did release the defendant from his personal liability upon said bond." But there is no averment that Wadsworth required or demanded that Nellany should execute this or any other agreement or obligation for the payment of a portion of the debt evidenced by the bond, or that the release was executed in consideration thereof, or as a condition of its execution. It appears that on October 4, 1901, during the pendency of the foreclosure suit, Wadsworth served upon Nellany a written notice, stating that he was entitled to the benefit of said agreement to recover thereon in case of a deficiency on the sale of the premises, and that he would not recognize any assignment or release thereof, but would hold him liable to the full extent of his obligation under said agreement. About the same time he served a notice to the same effect upon Dilcher. Nellany was made a party to the foreclosure

suit, because, as it was alleged, he had or claimed some interest in the property, but no claim for a deficiency judgment was made against him, and (we infer) the agreement or covenant made with Dilcher was not mentioned in the complaint.

Upon the trial both parties requested the direction of a verdict in his favor, or, rather should it be said, that Mr. Wadsworth makes the request solely upon his own behalf, upon the ground that he is the real party in interest and sole owner of the claim in suit, and plaintiff is but a mere trustee for him. The plaintiff himself, however, does not desire that a verdict should be directed in his own favor or in favor of Wadsworth. The effect of a request by each party for a direction of a verdict in his favor is to clothe the court with the functions of a jury in determining questions of fact and in drawing inferences from facts proven or admitted. Thompson v. Simpson, 128 N. Y. 270, 283, 28 N. E. 627. The presumption of the existence of one fact from the existence of another—that is, the process of ascertaining one fact from the proof of another—is within the exclusive province of the jury. In inferring one fact from others which have been established, the jury does nothing more than apply a process of reasoning, the force of which rests on experience and observation, and such inferences are presumptions of fact. Justice v. Lang, 52 N. Y. 328–329. It is the province of a jury, not only to pass upon conflicting evidence, but, where different inferences may be drawn from evidence or from the conduct of the parties, to draw the inference. Powell v. Powell, 71 N. Y. 71.

Accordingly, therefore, it becomes the duty of the court to draw such inferences or presumptions of fact as are fairly, justly, or reasonably warranted by the facts admitted, the conduct of the parties, and the particular circumstances of the case. The fact that Wadsworth released defendant from liability upon the bond—a liability for the whole amount of it—is not conclusive, since the parties were at liberty to enter into some new form of agreement for the payment of the debt, or some portion of it, evidenced by the bond, and in consideration or as a condition of the release. Such agreement may be executed in form either to Wadsworth as the promisee, or it may be made directly with the defendant's co-obligor to pay one-half of any deficiency judgment. In other words, the obligation may be made with Dilcher for the benefit of Wadsworth. Now, it is admitted that both the plaintiff and the defendant, by the hands of their agent or representative, delivered the instrument in suit to Wadsworth, who, after making the interlineation, "heirs, executors," etc., gave it back to the agent, Roesch, who, after securing defendant's written approval thereof, returned and delivered the instrument to Wadsworth, and that then the latter delivered the release to Roesch. From the acts and conduct of the parties a strong presumption arises that the covenant or agreement was executed and delivered in consideration of the release as well as of the consent of Dilcher thereto. In view of the circumstances stated, we cannot reasonably infer or presume that Wadsworth would have given the release without the agreement; and, although he may not have required the execution of such an agreement in the first instance,.

yet we are at liberty to infer that its execution and delivery of it to him was an inducement to the delivery of the release. He may have retracted and refused to give the release upon the bare consent of Dilcher (if he ever made such promise or agreement), and have required that defendant should assume some new obligation for the deficiency, if any, upon a sale of the mortgaged premises.

The fact that both Dilcher and the defendant delivered, consented to, or authorized the delivery of this covenant to Wadsworth is very significant, as indicating that it was the intention or purpose of the parties that it should inure to his personal benefit as the holder of the bond and mortgage, in the event that a judgment for a deficiency should be rendered. And, besides, the record does not show that either a copy or a duplicate of the instrument was delivered to Dilcher and retained by him. Therefore we do not consider the fact or circumstance of any particular consequence that the only consideration expressed in the covenant is the consent of Dilcher, since it is not essential that any consideration should move from the third party to the promisor, though in this case our conclusion is that Wadsworth, also, furnished a consideration. The recital of a particular consideration does not preclude proof of an additional one. Nor is Mr. Wadsworth concluded by the fact that he has failed or omitted to allege in the complaint any other consideration than that expressed in the covenant, since there was no necessity of doing so, as he and Dilcher were then on very amiable terms. It not only appears that the covenant was made for the benefit of Wadsworth, but "its direct object must have been to benefit him," and, besides, he had "a legal or equitable interest in its performance." Rochester Dry Goods Co. v. Fahy, 111 App. Div. 752, 97 N. Y. Supp. 1013. It is not true, therefore, that this is a mere covenant to indemnify and save Dilcher harmless from loss or damage, and to be strictly limited or confined in its legal operation or effect to the immediate parties to it, since it also contains a positive obligation to pay one-half of any deficiency judgment that might be rendered upon the foreclosure of the Wadsworth mortgage. In other words, it is a covenant to pay a debt owing, or that may become due and owing, from Dilcher to Wadsworth, and this covenant is also delivered to the latter. In such case Dilcher could maintain an action without having first paid the deficiency judgment. Thomas v. Allen, 1 Hill, 145; Churchill v. Hunt, 3 Denio, 321; Kohler v. Matlage, 72 N. Y. 266, 267.

If these views are sound, it follows that the parties could not have designed or intended that the release should affect or impair the contemporaneous agreement executed by defendant and delivered to Wadsworth. On the contrary, the only fair presumption or inference that can or ought to be raised or drawn is that the new agreement was intended as a substitutionary obligation for the benefit of Wadsworth, in consideration of the release from a more extensive liability or obligation. The promise, in legal effect, is a promise to pay to the creditors the debts owing to them by the person from whom the consideration moves. The debtors obligation is to them alone, and they acquire through the promise additional security for the payment of their debts. Barlow v. Myers, 64 N. Y. 44, 21 Am.

Rep. 582. So that, if the agreement had not been under seal, no reasonable doubt could exist that Mr. Wadsworth could successfully invoke the application of Lawrence v. Fox. But it is contended by the defendant's counsel, and conceded by Mr. Wadsworth, that he (Wadsworth) could not maintain an action in his own name upon the sealed covenant. And yet it has been said by high authority:

"And, though a distinction has sometimes been made in favor of a simple contract, it is now held that when the agreement is in writing, and under seal, the same rule prevails." Coster v. Albany, 43 N. Y. 411 (an action upon a covenant to pay damages); Pond v. New Rochelle Water Co., 183 N. Y. 334, 76 N. E. 211, 1 L. R. A. (N. S.) 958; Riordan v. First Presby. Church, 6 Misc. Rep. 84, 26 N. Y. Supp. 38.

In Burr v. Beers, 24 N. Y. 178, 80 Am. Dec. 327, it was held that an action at law could be maintained by the mortgagee upon the covenant in the grantee's deed, even without foreclosing the mortgage. And see Thorp v. Keokuk Coal Co., 48 N. Y. 256–258; Campbell v. Smith, 71 N. Y. 26, 27 Am. Rep. 5; Hand v. Kennedy, 83 N. Y. 150. In Simson v. Brown, 68 N. Y. 355, it was held that the third party could not maintain an action upon a bond drawn in the usual form, because it did not contain a promise to pay any one, but intimating that, if it had contained such a promise, the plaintiff could sue upon it. And so it was decided in Pulver v. Skinner, 42 Hun, 323. In Feist v. Schiffer, 79 Hun, 275, 29 N. Y. Supp. 423, it was held, in the light of the surrounding circumstances, that the instrument was not a covenant for the benefit of a third party, but was one of indemnity merely. In Henricus v. Englert, 137 N. Y. 488, 33 N. E. 550, it is held that no person can sue to enforce covenants contained in a writing under seal, except those who are named as parties thereto, and who signed and sealed the same. Whether this case is reconcilable in reason and principle with the other cases above referred to we will not undertake to determine, since there exists ample "authority" to sustain our position. The rule itself is purely technical and is founded upon artificial reasons and refined distinctions. See Baldwin v. Emery, 89 Me. 496, 36 Atl. 994; National Bank v. Sequr, 39 N. J. Law, 176. And since forms of action are abolished there is no such thing as an action of covenant, of debt, or assumpsit. The former rule has been so far modified by Codes in many states that the real party in interest may bring an action in his own name on the covenant; or he may bring suit in the name of the legal plaintiff without his consent thereto. 5 Encyc. of Plead., etc., 352, 357.

In Illinois it is held that debt is likewise a proper form of action by a beneficiary on a covenant made between others for his benefit. And in South Carolina an action of covenant was held maintainable. Duncan v. Moon, Dudley, 332; Fellows v. Gilman, 4 Wend. 415, 419, cited in Mallory v. West Shore, etc., R. Co., 35 Super. Ct. 179.

Under the old rule the assignee of a chose in action was required to sue at law in the name of his assignee as A. B. for the use of Y. Z. Here we must consider that this action was really instituted by Mr. Wadsworth in the name of Dilcher, and it is proper, therefore, to grant the motion to amend the complaint so as to indicate that it is "for the use of George Wadsworth"—for his protection. Cassidy v. Sauer, 114

App. Div. 673, 676, 99 N. Y. Supp. 1026. Such amendment will not change the cause of action. It is not essential, though, that the plaintiff should declare that he is suing in a representative character. Parker v. Paine, 37 Misc. Rep. 768, 76 N. Y. Supp. 942.

The argument that the plaintiff was a trustee "authorized" to collect the money and pay it over to Mr. Wadsworth need not be discussed in view of the conclusions reached.

It follows that a verdict should be directed in favor of the plaintiff "Jacob Dilcher, for the use of George Wadsworth," upon the second cause of action set forth in the complaint for $6,802.05; and, though no motion has been made for a nonsuit as to the first cause of action alleged, it should be disposed of by granting a nonsuit.