LOUIS SMYTH et al., as Administrators with the Will Annexed of·HUGH SMITH, Deceased, Appellants, *v.* THE CITY OF NEW YORK et al., Respondents.

Municipal corporations — construction of subway by contractors — when city not liable for negligence of contractor — contractor's liability to abutting owner for damages caused by explosion of dynamite due to sub-contractor's negligence.

Through the negligence of a sub-contractor engaged in the construction of the rapid transit subway in New York city, plaintiff's abutting property was injured by an explosion of dynamite. The contract between the contractor and the city provided: "The contractor shall be responsible for all damage which may be done to abutting property or buildings or structures thereon by the method in which the construction hereunder shall be done, but not including in such damage any damage necessarily arising from proper construction pursuant to this contract or the reasonable use, occupation or obstruction of the streets thereby." *Held, First,* that the city is not liable for the negligence of the contractor to whom the work had been let, nor is it liable on the ground that it suffered a nuisance to be maintained in the street. *Second,* the contractor is liable for the damages sustained by reason of the negligence of the sub-contractor. *Third,* as this was not an agreement of indemnity to the city, but an agreement to be responsible to abutting owners for damages arising from improper construction or unreasonable use and occupation of the streets, an abutting owner can maintain an action under this provision of the contract, although he was not a party thereto.

*Murphy* v. *City of New York,* 128 App. Div. 463, modified.

(Argued May 8, 1911; decided October 3, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 20, 1908, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry de Forest Baldwin* for appellants. The city is bound to exercise due care to keep the streets in a safe condition and is liable for permitting dangerous nuisances therein. (*Landau* v. *City of New York,* 180 N. Y. 48; *Vogel* v. *Mayor, etc.,* 92 N. Y. 10; *Storrs* v. *City of Utica,* 17 N. Y. 104; *Requa* v. *City of Rochester,* 45 N. Y. 129; *Wilson* v. *City of Watertown,* 3 Hun, 508; *Carpenter* v. *City of New York,* 115 App. Div. 552.) The city and the contractor were guilty of a breach of duty in not seeing to it that the quantities of dynamite necessary for the prosecution of the work were handled carefully and in such a way as not to create a nuisance. (*Matter of Rapid Transit Comrs.,* 197 N. Y. 81; *Deming* v. *Terminal Railway,* 169 N. Y. 1; *Johnston* v. *Phœnix Bridge Co.,* 44 App. Div. 581; 169 N. Y. 581; *Mullins* v. *Siegel-Cooper Co.,* 183 N. Y. 129; *Downey* v. *Low,* 22 App. Div. 460; *Woodman* v. *Met. R. R. Co.,* 149 Mass. 335; *Flynn* v. *N. Y. E. R. Co.,* 17 J. & S. 60; *Morris* v. *Salt Lake City,* 101 Pac. Rep. 373; *Brusso* v. *City of Buffalo,* 90 N. Y. 679; *Turner* v. *City of Newburgh,* 109 N. Y. 301; *Cameron* v. *Oberlin,* 19 Ind. App. 142; *Bower* v. *Peate,* L. R. [1 Q. B. D.] 321; *Chicago* v. *Robbins,* 2 Black, 418.) McDonald contracted that he would be responsible for all damage which might be done to abutting property by the method by which the construction was done. This provision prevents him from shifting the responsibility thus assumed to a sub-contractor. (*Johnston* v. *Phœnix Bridge Co.,* 44 App. Div. 581; *Matter of T. F. St. R. R. Co.,* 102 N. Y. 343; *Smith* v. *Mayor, etc.,* 68 N. Y. 552; *People* v. *O'Brien,* 111 N. Y. 1; *Thompson* v. *People,* 23 Wend. 537; *McGregor* v. *Erie Ry. Co.,* 35 N. J. L. 89, 97; *Police Jury* v. *Bridge Co.,* 44 La. Ann. 137.)

*Archibald R. Watson,* Corporation Counsel (*Terence Farley* and *Theodore Connoly* of counsel), for city of New York, respondent. In order to entitle the plaintiffs

to recover against the city of New York it was essential
that they prove either that the city was guilty of negli-
gence or of authorizing or maintaining a public nuisance.
(*Froelich* v. *City of New York*, 199 N. Y. 466; *Turner*
v. *D. M. Cont. Co.*, 99 App. Div. 135; 184 N. Y. 525;
*Mahoney* v. *City of Boston*, 171 Mass. 427; *Haefelin* v.
*McDonald*, 96 App. Div. 219; *Sander* v. *State*, 182 N. Y.
400; *Carpenter* v. *City of New York*, 115 App. Div. 562.)
The same rule applies when the independent contractor,
over whom the employer has no control, creates a nui-
sance which is not the consequential result of the work
which he is constructing. (*A. & F. R. Co.* v. *Kim-
berly*, 87 Ga. 161; *Vogel* v. *Mayor, etc.*, 92 N. Y. 10;
*Cuff* v. *N. & N. Y. R. R. Co.*, 35 N. J. L. 17; *Berg* v.
*Parsons*, 156 N. Y. 120.) The exceptions to the rule of
non-liability for the acts of an independent contractor
have no application to the case at bar. (*Booth* v. *R., W.
& O. R. R. Co.*, 140 N. Y. 267; *Pack* v. *New York*, 8
N. Y. 222; *Kelly* v. *New York*, 11 N. Y. 432; *French* v.
*Vix*, 143 N. Y. 90; *McCafferty* v. *S. D. & P. M. R. Co.*,
61 N. Y. 178; *Berg* v. *Parsons*, 156 N. Y. 109; *Herring-
ton* v. *Lansingburgh*, 110 N. Y. 145; *Hunt* v. *Vanderbilt*,
115 N. C. 559; *Schnurr* v. *Huntington Co.*, 22 Ind. App.
188; *Blumb* v. *Kansas*, 84 Mo. 112.) The city, through
its bureau of combustibles of the fire department, having
granted a permit to Shaler to store dynamite, had the
right to assume and were justified in believing that he
would comply with its terms and conditions, and it is not
responsible for his failure to do so. (*Vil. of Port Jervis*
v. *F. Nat. Bank*, 96 N. Y. 556; *Susquehanna Depot* v.
*Simmons*, 112 Penn. St. 384.) The city is not responsible
because of its neglect to enforce its ordinances and by-laws
regulating the storage of dynamite. (*Leonard* v. *Hor-
nellsville*, 41 App. Div. 106; *Griffin* v. *Mayor, etc.*, 9
N. Y. 456; *Lorillard* v. *Munroe*, 11 N. Y. 392; *Coonley* v.
*City of Albany*, 132 N. Y. 145; *Stillwell* v. *Mayor, etc.*,
17 J. & S. 360; 96 N. Y. 649; *Levy* v. *Mayor, etc.*, 1

Sandf. 465.)   The city is not responsible for the omission of the employees of the fire department in failing to enforce the regulations of that department.   (*O'Meara* v. *Mayor, etc.,* 1 Daly, 425; *Woolbridge* v. *Mayor, etc.,* 49 How. Pr. 67; *Thompson* v. *Mayor, etc.,* 20 J. & S. 427; *Smith* v. *City of Rochester,* 76 N. Y. 506; *Terhune* v. *Mayor, etc.,* 88 N. Y. 247.)

*De Lancey Nicoll, Courtland V. Anable* and *Raymond D. Thurber* for John B. McDonald et al., respondents. The plaintiffs' damages were, as matter of law, caused solely by Shaler and his servants, for whose acts or omissions none of the defendants is responsible.   (*Uppington* v. *City of New York,* 165 N. Y. 222; *Pack* v. *Mayor, etc.,* 8 N. Y. 222, *Kelly* v. *Mayor, etc.,* 11 N. Y. 432; *Slater* v. *Mersereau,* 64 N. Y. 138; *King* v. *Livermore,* 9 Hun, 298, 71 N. Y. 605; *City of Buffalo* v. *Clement,* 46 N. Y. S. R. 676, 679; *Overton* v. *Freeman,* 11 C. B. 867; Moll on Independent Contractors, § 57.)   McDonald did not assume, in his contract with the city, an obligation to pay to abutting owners the damage caused them by the torts of sub-contractors.   (*Haefelin* v. *McDonald,* 96 App. Div. 213, *Rooney* v. *Brogan Const. Co.,* 194 N. Y. 32; *Hoffman* v. *Æ. L. Ins. Co.,* 32 N. Y. 405; *Gillet* v. *Bank of America,* 160 N. Y. 549; *Marshall* v. *C. T. M. Assn.,* 170 N. Y. 434.)   On no possible theory is the defendant Rapid Transit Subway Construction Company liable in this action.   (*Miller* v. *N. Y., L. & W. R. R. Co.,* 125 N. Y. 118; *Pack* v. *Mayor, etc.,* 8 N. Y. 222; *Kelly* v. *Mayor, etc.,* 11 N. Y. 432; *Uppington* v. *City of New York,* 165 N. Y. 222.)

CULLEN, Ch. J.   This action is brought by the owners of the Murray Hill Hotel, which abutted on Park avenue, borough of Manhattan, city of New York, to recover damages to such hotel caused by the explosion of a dynamite magazine located on said avenue during the

construction of the rapid transit subway. The construction of the subway at this point was being carried on by one Shaler, a sub-contractor. The excavation was being made through rock which had to be removed by blasting. For this purpose dynamite was employed — the central part of the carriageway of the avenue being fenced against use by the public, and a small wooden building was placed there in which the dynamite for use was kept. Of the details of the explosion, it is enough to say that in our opinion the evidence was sufficient to authorize the jury to find that an excessive amount of dynamite was stored in the magazine and that proper precautions had not been taken for guarding it against the danger of explosion. The action, however, is not brought against the sub-contractor, but against the city of New York, McDonald, who contracted with the city for the construction and subsequent operation of the subway, and the Rapid Transit Subway Construction Company, which rendered financial aid to McDonald in the execution of his contract. The question presented on this appeal is whether any of these defendants is liable for the negligence of the sub-contractor.

On February 21, 1900, under the provisions of the Rapid Transit Act (L. 1892, ch. 556; L. 1896, ch. 729; L. 1900, ch. 16; L. 1901, ch. 4; L. 1904, ch. 752), the rapid transit commissioners were authorized to enter into a contract on behalf of the city for the construction and equipment of a railroad upon the route and in accordance with the general plans adopted by the commissioners. Subdivision 5, section 24 of the Rapid Transit Act authorized the contractor to enter upon and underneath the several streets of the city for the prosecution of the work and the use of such streets was declared to be a public use. In September, 1900, Shaler entered into a sub-contract with McDonald to do the work along the line of which the explosion occurred.

We think it clear that under previous decisions of this

court the city was not liable for the negligence of the contractor to whom the work had been let. (*Froelich* v. *City of New York*, 199 N. Y. 466; *Uppington* v. *City of New York*, 165 N. Y. 222.) Nor do we think the city can be held liable on the ground that it suffered a nuisance to be maintained in the street, the street having been withdrawn from its possession and control. It was not liable for the default of the fire department or of the bureau of combustibles. (*Maxmilian* v. *Mayor, etc., of N. Y.*, 62 N. Y. 160; *Ham* v. *Mayor, etc., of N. Y.*, 70 N. Y. 459; *Smith* v. *City of Rochester*, 76 N. Y. 506, 513; *Terhune* v. *Mayor, etc., of N. Y.*, 88 N. Y. 247.) Nor was there evidence to show that the city authorities were aware that any excessive quantity of dynamite was being stored. The complaint was, therefore, properly dismissed as against the city, and it may be that the same doctrine that gives immunity to the city would also give immunity to the defendant McDonald, the principal contractor, for the negligence of his independent sub-contractor. Whether this is so, it is unnecessary to determine, as we are of opinion that McDonald was liable in this case by the express terms of his contract with the rapid transit commissioners. The contract contained the following provisions :

"Traffic to be Maintained. Indemnification for accidents.— The contractor shall during the performance of the work safely maintain the traffic on all the streets, avenues, highways, parks and other public places in connection with the work, and take all necessary precautions to place proper guards for the prevention of accidents, and put up and keep at night suitable and sufficient lights and indemnify and save harmless the city against and from all damages and costs to which it may be put by reason of injury to the person or property of another or others, resulting from negligence or carelessness in the performance of the work or from guarding the same, or from any improper materials used in its construction, or by or on

account of any act or omission of the contractor or the agents thereof.

"Contractor's Liability for Damage to abutting property.— *The contractor shall be responsible for all damage which may be done to abutting property or buildings or structures thereon by the method in which the construction hereunder shall be done, but not including in such damage any damage necessarily arising from proper construction pursuant to this contract or the reasonable use, occupation or obstruction of the streets thereby.*"

An analysis of this portion of the contract shows that it contained three independent and different covenants or agreements on the part of the contractor. The first is one to safely maintain traffic on the public streets and to take necessary precautions and erect proper guards for the prevention of accidents; the second, to indemnify the city against any or all damage to which it might be put by reason of negligence in the performance of the work; the third, to be responsible for damages to abutting property, buildings or structures arising from other than the proper construction of the work and the reasonable use and occupation of the streets. As we construe this last clause — a construction supported by the marginal notes — it was not an agreement of indemnity to the city, for that was sufficiently covered by the preceding provisions, but an agreement to be responsible to abutting owners for damages arising from improper construction or unreasonable use and occupation of the streets. Therefore, the question before us is further narrowed to this: Can an abutting owner maintain an action under this provision of the contract to which contract he is not a party? To sustain a negative answer the respondent relies upon the decision of this court in *French* v. *Vix* (143 N. Y. 90). In that case the owner of a lot of land entered into a contract with the defendants for the construction of a house, under which the latter agreed to become answer-

able "and accountable for any damages that may be done to the property or person of any neighbor" during the performance of the work. The defendants made a sub-contract for the excavation, the sub-contractor agreeing to assume all responsibility for damage to persons or property. The plaintiff owned an adjoining house which was injured by the blasting carried on by the sub-contractor. She sought to maintain the action on the provision of the defendant's contract with the owner of the adjacent land. She was defeated in this court on two grounds: 1. That the contract was simply one of indemnity and was not intended for the plaintiff's benefit. That ground has no application to the present case under the construction we have given to the defendant's contract. 2. That even if the contract was intended for her benefit she could not recover because she was not a party to it, nor in privity with the parties, and as to her it was without consideration. The second ground is but a reiteration of the general rule of law that a stranger to a contract cannot maintain an action upon it, and if the defendant's contract were with private persons that rule of law would be applicable. But even between private parties the rule is not universal, and a third party may maintain an action on a contract against the promisor where the contract is made for his benefit and some obligation or duty to the third party rests on the promisee. Thus, where the promisee is indebted to a stranger to the contract, a promise made on sufficient consideration may be enforced by the latter. (*Lawrence* v. *Fox*, 20 N. Y. 268; *Burr* v. *Beers*, 24 N. Y. 178.) In *Todd* v. *Weber* (95 N. Y. 181) it was held that the relation of parent and child was sufficient consideration for a contract made by the parent with others for the support of the child, and that the latter might enforce it by action. In *Buchanan* v. *Tilden* (158 N. Y. 109) the same doctrine was held in regard to a contract made by a husband for the benefit of his wife. A

8

still broader doctrine is held in the case of what may be termed public contracts. In *Little* v. *Banks* (85 N. Y. 258) it was said: "Contractors with the State, who assume, for a consideration received from the sovereign power, by covenant, express or implied, to do certain things, are liable, in case of neglect to perform such covenant, to a private action at the suit of the party injured by such neglect, and such contract inures to the benefit of the individual who is interested in its performance." (p. 263.) In that case the defendant had a contract with the state officers to sell and deliver to the public volumes of the law reports, which he was about to publish, at certain specified prices, and upon failure to comply with that agreement he agreed to pay to any persons aggrieved the sum of $100. It was held that the plaintiff, a person to whom the defendant had refused to deliver such reports, might maintain his action to recover the stipulated damages. In *Robinson* v. *Chamberlain* (34 N. Y. 389) a contractor for keeping the state canal in repair was held liable for injuries sustained by the canal boat of a private individual by the failure of the defendant to perform his contract. In *Cook* v. *Dean* (11 App. Div. 123; affd. on opinion below, 160 N. Y. 660) a contractor who entered into a contract with the supervisors of two counties for the construction of a bridge over a creek dividing the two counties, and also for the construction and maintenance of a temporary bridge during the progress of the main work, was held liable for defects in the temporary structure through which the plaintiff was injured, though neither of the counties would have been liable for such neglect. (*Markey* v. *County of Queens*, 154 N. Y. 675, 684.) The most recent case in this court is that of *Pond* v. *New Rochelle Water Co.* (183 N. Y. 330). There the predecessor of the defendant had made a contract with the village of Pelham Manor for supplying not only the village itself, but also all its inhabitants with a supply of water at certain

specified rates.    The plaintiff, who was a resident and householder of said village, brought the action to restrain the defendant from exacting from him a higher water rate than that specified in the agreement with the village. The objection that the plaintiff was a stranger to the contract was overruled.    Judge EDWARD T. BARTLETT, writing for the court, said: "In the case before us we have a municipality entering into a contract for the benefit of its inhabitants, the object being to supply them with pure and wholesome water at reasonable rates.    While there is not presented a domestic relation like that of father and child or husband and wife, yet it cannot be said that this contract was made for the benefit of a stranger.    In the case before us the municipality sought to protect its inhabitants, who were at the time of the execution of the contract consumers of water, and those who might thereafter become so, from extortion by a corporation having granted to it a valuable franchise extending over a long period of time."    (See, also, *Rochester Telephone Co.* v. *Ross,* 195 N. Y. 429.)

In principle the case cited and the one before us seem to be almost identical.    There, as here, the first object of the contract was for the supply of a corporate, as distinguished from a governmental want; there it was supplying water for the hydrants, street and fire purposes; here the construction of a railroad.    In the first case it was held that the village in its governmental character had sufficient interest in the welfare of its citizens and inhabitants to secure to each of them a supply of water at reasonable rates.    In the case before us it was well known and generally appreciated that for at least some very substantial part of the discomfort, damage and injury occasioned to the abutters by even the most careful and proper prosecution of the work, the abutter could not recover indemnity or compensation.    It was also appreciated that in the prosecution of all great works, at times negligence and fault will occur, and that

such fault will often be on the part of irresponsible parties from whom there would be small chance of recovering pecuniary redress. Therefore, though the city might not be liable for injuries occasioned by such negligence, it was entirely proper, if not morally obligatory upon the part of the rapid transit commissioners to secure the abutting owners from loss or damage occasioned by negligence and improper conduct of the work. This could only be accomplished by placing liability for the negligence upon a responsible contractor to whom they might give out the work, for the commissioners could not dictate the sub-contractors with whom he might contract. We are of opinion, therefore, that the defendant McDonald was, under his contract, liable for the damages sustained by the plaintiffs, and as to him the judgment below should be reversed, and a new trial granted, with costs to abide the event. It should be affirmed, with costs, as to the city of New York and the Rapid Transit Subway Construction Company, as to which last defendant we see no possible theory for imposing liability on it.

Haight, J. (dissenting in part). I concur in the opinion of the chief judge, in so far as he holds that the judgment of nonsuit should be reversed as to McDonald; but I am also of the opinion that there should be a reversal as to the city of New York.

Assuming that the fire department and the bureau of combustibles exercised a governmental function and that such bureau was charged with the duty of regulating the use of dynamite, yet I think the city is not relieved from liability in this case by reason of such facts. The care and maintenance of highways in a safe condition was also the exercise of governmental functions. But it was long since held in this court that municipalities which exist under charters issued by the state, vesting in them the care and maintenance of the highways, were by reason of the acceptance of such charters impliedly

deemed to have contracted to keep and maintain the high-ways in a safe condition; and that for a failure so to do, the municipalities became liable in damage to the persons injured. (*Conrad* v. *Trustees of Village of Ithaca*, 16 N. Y. 158. See, also, *Weet* v. *Trustees of Village of Brockport*, reported in note, 16 N. Y. 161.) If placing the public ways under the care of the police or fire departments will relieve the municipalities from liability for injuries resulting from unsafe highways, then an easy way has been discovered by which they can annul their contractual relation to the people of the state. I am unwilling to assent to such a doctrine. I am of the opinion that the city of New York in accepting its charter from the state has undertaken to keep the streets and highways in a safe condition, and this duty being contractual it becomes a municipal duty and remains such even though they may employ policemen or firemen to assist in the discharge of that duty.

It appears from the evidence that the contractor in constructing a subway underneath Park avenue was permitted to sink two shafts in the avenue at the corner of Forty-first street, one on the west side in front of the Murray Hill Hotel and the other on the east side of the avenue. These shafts were inclosed by a fence, but between the westerly curb and the inclosure there was retained a passageway for vehicles. Inside of the fence, on the highway, was constructed a platform upon upright posts about twelve feet high, on which was placed an engine and boiler and hoisting apparatus. Underneath the platform, which supported the engine and boiler, was maintained a magazine for dynamite. The magazine was a wooden shanty, entrance to which was had through a door which was frequently left open. In cleaning out the fire under the boiler they dumped the fire on the floor of the platform above the magazine or else threw it on to the pavement below. Inside the shanty was erected a cupboard with sliding shelves made of wire netting for

holding the dynamite, and underneath this cupboard was a coil of steam pipes which were heated by live steam from the boiler above and used for the purpose of thawing the dynamite when frozen. The shanty, having no windows, was dark and consequently a light was necessary. This was furnished by a candle on the south wall which was held in place by two nails crossing each other and driven into the woodwork. The candle was left burning nearly all the time. Occasionally paper used in tamping was left under the candle and only two feet away from it. The fixing of the explosive caps to the dynamite sticks and making up the tamping paper into cartridges for blasting purposes was done inside of the shanty, and the magazine was frequently left with no one in charge, with the candle burning and with the door unlocked. The evidence further tends to show that in the magazine there was usually stored from one hundred and fifty to six hundred pounds of dynamite, and on the day of the explosion, the 27th day of January, 1902, there was at least three hundred and fifty pounds, and perhaps six hundred and fifty pounds, therein. This structure had been maintained for such a length of time that the city must be deemed to have had notice of its existence.

I am of the opinion that the evidence was sufficient to justify a finding that the city had suffered a dangerous nuisance to be maintained in Park avenue, a public highway, in violation of its agreement with the people of the state, and that consequently it was responsible for the damages caused by the explosion.

WERNER, WILLARD BARTLETT, CHASE and COLLIN, JJ., concur with CULLEN, Ch. J.; HAIGHT, J., reads opinion dissenting from affirmance of judgment in favor of the city of New York; HISCOCK, J., absent.

Judgment accordingly.