The action was brought to recover damages resulting to the plaintiffs from changing the grade of Columbia street in the city of Rensselaer, upon which street the lands of the plaintiffs abut.
For a period of thirty-eight years before the change of grade complained of, Columbia street was carried over the defendant's railroad tracks on a bridge, and there was a slight grade or elevation in the street as it approached the railroad bridge in front of the plaintiffs' land, which lies next to the defendant's railroad tracks. The approach to the bridge did not occupy the whole width of the street, and there was a space about eighteen feet wide in front of, and on the same level as, the plaintiffs' land, which afforded easy access thereto.
By its charter (Laws of 1897, chap. 359) the common council of the city of Rensselaer was given charge and control of the streets of the city as commissioners of highways, with power to direct the filling in, leveling and grading of streets, and the construction and maintenance of bridges therein.
In 1909 the bridge over the defendant's railroad tracks was out of repair and unsafe for public travel, and the common council of the city directed the railroad company to repair the same. The railroad company prepared plans for the reconstruction of the bridge with a clearance of sixteen feet two inches above the top of the rails. Two sets of plans prepared by the company were disapproved by the common council as not sufficiently clearing the railroad tracks. Thereafter, and in 1910, the defendant submitted plans for the reconstruction of the bridge with a clearance of twenty-one feet above the rails, and with a span forty-six feet longer and ten feet wider than the old bridge. These plans were approved by the common council of the city, and a contract under *Page 35 
seal between the defendant and the city was made which authorized the defendant to reconstruct the bridge in the street, and which provided, among other things, as follows:
"The party of the second part [the railroad company] expressly covenants and agrees that in the event of any damage resulting from the `work' as it progresses, or thereafter, as a result or in consequence thereof, or from any matter or thing connected therewith, arising therefrom, to any person or property, including damage resulting from change of grade of street, being approaches to said bridge, it will pay and liquidate the same at its own expense and assume the liability therefore, and in the event of any action or actions, proceeding or proceedings, of any kind or description being brought against the city of Rensselaer, by reason of, or on account of, or growing out of said `work,' or its construction, or to prevent the performance thereof, or anything connected therewith, and the said party of the second part will at its own expense defend the same, and will pay any judgment or award recovered therein, and will in all respects fully indemnify and save harmless the said city, its officers, agents and representatives from any and all costs, expenses, payment of judgment, to be recovered or incurred in such action or actions, proceeding or proceedings."
Pursuant to this contract the defendant reconstructed the bridge over its tracks, making the same longer and wider than the old bridge, and also about five feet higher, to give the clearance contemplated by the plans. The defendant also, as provided by the plans, placed an embankment in front of the plaintiffs' premises on Columbia street, occupying the whole width of the street, and extending along the street for a distance of about two hundred and sixty-five feet up to the new bridge. The embankment was fifteen feet high in front of the plaintiffs' property, and it obstructed and very seriously *Page 36 
interfered with the access thereto from Columbia street, and caused material damage to the plaintiffs.
The plaintiffs raise no question as to the common-law rule that the owner of land abutting on a street or highway is not entitled to compensation for a change of grade therein when lawfully made for a public purpose. (Radcliff's Executors v. Mayor, etc., ofBrooklyn, 4 N.Y. 195; Conklin v. N.Y., Ont. W. Ry. Co.,102 N.Y. 107.) Their claim against the defendant railroad company is: (a) That they are entitled to compensation under section 81 of the Rensselaer city charter; (b) that the change of grade was not made for a public purpose but for the sole benefit of the defendant, a private corporation; and (c) that the defendant is liable to the plaintiffs under the provisions of its contract with the city to pay damages for the change of grade in Columbia street.
Section 81 of the charter of the city of Rensselaer (Laws of 1897, chap. 359) has not the legal force asserted by the plaintiffs, and is not sufficient to impose liability for a change of grade in the street contrary to the provisions of the common law. Section 81 provides as follows: "Whenever the common council shall intend to lay out, alter, widen, extend, contract or discontinue any street, lane, alley, highway or public grounds in said city, and the lands of any person or corporation, or any right or easement therein will be necessary for that purpose; and whenever the common counsel shall intend to acquire lands, rights or easements therein for any other purpose mentioned in this act, they shall" proceed as in the charter expressly provided and may take and appropriate property as required, upon making compensation therefor. It seems clear that this is only a delegation to the municipality of the power of eminent domain and not an imposition of liability for a change of the grade in the street.
It has been held in some cases that when the change of grade in the street is not made for a public purpose, but *Page 37 
for the benefit of a private corporation, as the railroad company, the private corporation may be liable for the damages sustained. (Reining v. N.Y., L. W. Ry. Co., 128 N.Y. 157;Smith v. B. A.R.R. Co., 181 N.Y. 132.) The express finding of the court, which is supported by the evidence, is that the change of grade of Columbia street was not made by the defendant acting for its own benefit, but for the common council of the city. That takes the case out of the operation of the decisions cited.
The third claim of liability asserted by the plaintiffs rests, I think, on firmer ground. The contract between the city and the railroad company contains on the part of the defendant a covenant that in the event of any damage resulting to any person or property from the work done, "including damages resulting from change of grade of street, being approaches to said bridge, it will pay and liquidate the same at its own expense and assume the liability therefor." By referring to the provisions of the contract hereinbefore set forth which contains this clause, it will be found that it amounts to more than a covenant to indemnify the city. It is in addition an assumption of liability for damages which might result to any person from carrying out the contract for the bridge.
I can see no reason why the plaintiffs cannot recover under this provision of the contract, upon the theory of Lawrence v.Fox (20 N.Y. 268) that the covenant or promise in the contract between the city and the railroad company to pay damages resulting from the change of grade was for the benefit of the plaintiffs.
In order to bring the case within the doctrine of Lawrence v.Fox it must appear, first, that there was an intent on the part of the municipality to secure some benefit to the plaintiffs as the owners of land affected by the change of grade, and,secondly, that there was some obligation or duty owing from the municipality to the landowner which gives the latter a legal or equitable claim *Page 38 
to the benefit of the contract. (Vrooman v. Turner, 69 N.Y. 280. )
The first element of liability, viz., an intent on the part of the municipality to secure some benefit to the owners of the abutting property affected, is apparent. The words of the defendant's contract can be read in no other light than as showing an intention on the part of the municipality that the railroad company should assume liability and pay the damage certain to accrue to the abutting owner from change of grade in the street. These words can only relate to damage suffered by the plaintiffs and by other landowners similarly situated, if any there were, whose property abutted on the street where the change of grade was made.
The second element of liability, viz., some obligation or duty owing from the municipality to the owner of the abutting property, is also apparent. It exists in the fact that the city is under some obligation to protect its inhabitants, and when it enters into a contract for public work, which may result in damage to one of such inhabitants, for which otherwise he would be without remedy, the municipality may require the contractor to compensate the person injured.
In Pond v. New Rochelle Water Co. (183 N.Y. 330, 338) there was a contract between the city and a water company, granting to the company the right to lay pipes in the street, and requiring it to supply water to private consumers at fixed rates, which rates the defendant sought to raise. In a suit by a private consumer against the water company to restrain the proposed increase in rates, the court said: "In the case before us we have a municipality entering into a contract for the benefit of its inhabitants, the object being to supply them with pure and wholesome water at reasonable rates * * * it cannot be said that this contract was made for the benefit of a stranger * * *. The municipality sought to protect its inhabitants, who were at the time of the execution *Page 39 
of the contract consumers of water, and those who might thereafter become so, from extortion by a corporation having granted to it a valuable franchise extending over a long period of time," and held that the complaint stated a good cause of action. This case is also authority for the proposition that the action may be maintained, although the contract sued on is under seal.
This decision was approved in Smyth v. City of New York
(203 N.Y. 106, 115). That case was one wherein the owner of property abutting on Park avenue in the city of New York brought suit to recover damages caused by the explosion of a dynamite magazine located on the avenue during the construction of the rapid transit subway. The dynamite was exploded through the negligence of a sub-contractor. The contract between the city and the principal contractor provided that the latter should be responsible for all damages done to abutting property resulting from negligence in the performance of the contract. In a suit by the owner of the property damaged against the principal contractor the court held that the latter was liable, and continued as follows: "In the case before us it was well known and generally appreciated * * * that in the prosecution of all great works at times negligence and fault will occur, and that such fault will often be on the part of irresponsible parties from whom there would be small chance of recovering pecuniary redress. Therefore, though the city might not be liable for injuries occasioned by such negligence, it was entirely proper, if not morally obligatory upon the part of the rapid transit commissioners to secure the abutting owners from loss or damage occasioned by negligence and improper conduct of the work. This could only be accomplished by placing liability for the negligence upon a responsible contractor to whom they might give out the work, for the commissioners could not dictate the sub-contractor with whom he might contract. We are of the opinion, therefore, that the defendant [the principal contractor] *Page 40 
was, under his contract, liable for the damages sustained by the plaintiffs."
The principle of these decisions supplies the elements of liability on the part of the defendant under the doctrine ofLawrence v. Fox (supra) and leads to the conclusion that the determination of the Appellate Division should be affirmed, with costs in all courts, and that judgment absolute should be rendered against the defendant upon its stipulation as provided by law.
WILLARD BARTLETT, Ch. J., HOGAN, CARDOZO and POUND, JJ., concur; CHASE and COLLIN, JJ., dissent.
Order affirmed, etc.