MILTON SCHNAIER, Appellant, *v.* BRADLEY CONTRACTING COM-
PANY, Respondent, Impleaded with THE CITY OF NEW YORK,
Defendant.

First Department, February 15, 1918.

**Municipal corporations — contract between city and construction
company construed — personal liability of contractor to abutting
owner — right of abutting owner to sue upon said contract.**

Contract between a company engaged in constructing a subway and the
city of New York construed, and *held*, to indicate an intention on the part
of the contractor to become personally liable to an abutting owner for
injury to his property;

That there was such privity between the city and the party to the contract
and the abutting owner as to authorize the latter to sue upon the contract
made in his behalf.

APPEAL by the plaintiff, Milton Schnaier, from a judgment
of the Supreme Court in favor of the respondent, entered
in the office of the clerk of the county of New York on the
15th day of June, 1917, upon a dismissal of the complaint
at the opening by direction of the court.

*G. H. Brevillier* of counsel [*Thomas M. Healy* with him on
the brief], for the appellant.

*Frederick L. C. Keating* [*Israel V. Werbin* with him on the
brief], for the respondent.

*William L. Ransom* of counsel [*Howard A. Butler* with him
on the brief], for the Public Service Commission for the
First District.

SMITH, J.:

Plaintiff is the owner of an apartment house upon Lexington
avenue at the corner of Ninety-fifth street. The defendant,
the Bradley Contracting Company, was constructing the sub-
way. In that construction, and without any allegation of
negligence upon the part of the Bradley Contracting Com-
pany, the foundations of the plaintiff's apartment house were
shaken and made insecure, and the building was otherwise
damaged in the amount of $12,000, for which sum the plaintiff

demands judgment against both the Bradley Contracting Company and the city of New York.

At the beginning of the trial the complaint was dismissed as to the city of New York. From the order dismissing the complaint no appeal has been taken. As the trial progressed, the complaint was also dismissed as against the Bradley Contracting Company and the parties stipulated to strike out all the evidence in the case and to raise that question by letting the case come to this court as upon the motion to dismiss the complaint as failing to state a cause of action.

Two questions are presented upon this appeal: *First,* upon the construction of the contract — whether it was intended simply as one to indemnify the city, or whether a contract liability to the property owner injured was intended to be assumed. *Secondly,* assuming that there was an intention to assume a direct liability to the abutter, whether the individual abutter injured is so far in privity with the city that he may bring the action against the contractor.

*First.* A fair construction of the provisions of the contract indicate to my mind an intention on the part of the contractor to become personally liable to the abutter for the injury done. Articles 45 and 47 are as follows:

" Article 45. The Contractor expressly admits and covenants to and with the City that the plans and specifications and other provisions of this contract, if the work be done without fault or negligence on the part of the Contractor, do not involve any danger to the foundations, walls or other parts of adjacent buildings or structures or to navigation; and the Contractor will at his own expense make good any damage that shall, in the course of construction, be done to any such foundations, walls or other parts of adjacent buildings or structures or to navigation. The liability of the Contractor under this covenant is absolute and is not dependent upon any question of negligence on his part, or on the part of his agents, servants or employees and the neglect of the Engineer to direct the Contractor to take any particular precautions or to refrain from doing any particular thing, shall not excuse the Contractor in case of any such damage. Where the work is required to be done by tunneling

the same admission and covenant shall also apply to the foundations, walls and other parts of buildings and to any railroad track or structure, subway, street, conduit, pipe, sewer or other structure or surface over the tunnel.  *  *  *

" Article 47. The Contractor shall be solely responsible for all physical injuries to persons or property occurring on account of and during the performance of the work hereunder, and shall indemnify and save harmless the City from liability upon any and all claims for damages on account of such injuries to persons or property, and from all costs and expenses in suits which may be brought against the City for such injuries to person or property; it being distinctly understood, stipulated and agreed that the Contractor shall be solely responsible and liable for and shall fully protect and indemnify the City against all claims for damages to person or property occasioned by or resulting from blasting or other methods or processes in the work of construction whether such damages be attributable to negligence of the Contractor or his employees or otherwise."

The covenant of the contractor that he would, at his own expense, make good any damage that should be done to any foundations, walls or other parts of adjacent buildings or structures, and the further covenant that the contractor would be solely responsible for all physical injuries to persons or property occurring on account of or during the performance of the work under the contract, whether or not caused by his negligence contained in article 45 of the contract, is a direct promise to pay to the injured abutter. This article contains no hint of a liability for indemnity. The promise to make good is a promise to pay. (*Creed* v. *Hartmann,* 29 N. Y. 591.) Article 47 repeats this obligation and adds thereto a covenant to indemnify the city for all such liabilities. It is clear that for some of these injuries the city would not be liable and the assumed responsibility therefor must, therefore, be direct to the abutter injured. A covenant merely to indemnify the city would be expressed in language more simple and to so construe these covenants would emasculate the covenants by taking therefrom obligations explicitly assumed and such obligations as the Court of Appeals has held the municipality is morally bound to impose upon a

contractor engaged in similar work. These covenants are clearly distinguishable from those construed in *Haefelin* v. *McDonald* (96 App. Div. 213).

*Second.* Assuming then a personal covenant to pay to the abutter, the question remains whether the abutter is so far in privity with the city that he may take advantage of the covenant made in his behalf.

In *Pond* v. *New Rochelle Water Co.* (183 N. Y. 330, 338) a water company, in consideration of the right to lay and maintain its water mains and pipes through the streets of an incorporated village for a series of years, entered into a contract with the village whereby it agreed to supply private consumers and corporations in the village with pure and wholesome water at a rate per annum not exceeding a designated sum. It was held that an action might be brought by an individual resident for a permanent injunction restraining the company from enforcing collection of a water rate in excess of that fixed by the contract. The court there refers to the case of *Lawrence* v. *Fox* (20 N. Y. 268) and to other cases considering contracts made by one in behalf of another, and then says: " The principle established by this case has been applied to contracts entered into by a father for the benefit of his daughter, and by a husband for the benefit of his wife. As to the latter instance, see *Buchanan* v. *Tilden* (158 N. Y. 109). In the case before us we have a municipality entering into a contract for the benefit of its inhabitants, the object being to supply them with pure and wholesome water at reasonable rates. While there is not presented a domestic relation like that of father and child or husband and wife, yet it cannot be said that this contract was made for the benefit of a stranger. In the case before us the municipality sought to protect its inhabitants, who were at the time of the execution of the contract consumers of water, and those who might thereafter become so, from extortion by a corporation having granted to it a valuable franchise extending over a long period of time. We are of opinion that the complaint states a good cause of action."

In *Smyth* v. *City of New York* (203 N. Y. 106) the city had contracted with a contractor to build a subway, in which contract the contractor obligated himself to be responsible

for all damage which might be done to abutting property or buildings or structures thereon by the method in which the construction thereunder should be done, but not including in such damage any damage necessarily arising from proper construction pursuant to the contract or the reasonable use, occupation or obstruction of the streets thereby. It was held, *first*, that although the city might not be liable for the negligence of the contractor to whom the work had been let, and might not be liable on the ground that it suffered a nuisance to be maintained in the streets, nevertheless, that an abutter might bring an action directly against the contractor upon the covenant. Chief Judge Cullen, in speaking for the court, says: " A still broader doctrine is held in the case of what may be termed public contracts. In *Little* v. *Banks* (85 N. Y. 258) it was said: ' Contractors with the State, who assume for a consideration received from the sovereign power, by covenant, express or implied, to do certain things, are liable, in case of neglect to perform such covenant, to a private action at the suit of the party injured by such neglect, and such contract inures to the benefit of the individual who is interested in its performance.' (Page 263.) In that case the defendant had a contract with the State officers to sell and deliver to the public volumes of the law reports, which he was about to publish, at certain specified prices, and upon failure to comply with that agreement he agreed to pay to any persons aggrieved the sum of $100. It was held that the plaintiff, a person to whom the defendant had refused to deliver such reports, might maintain his action to recover the stipulated damages."

Several cases are referred to, among them the case of *Pond* v. *New Rochelle Water Company* (183 N. Y. 330), and Chief Judge Cullen then says: " In principle the case cited and the one before us seem to be almost identical. There, as here, the first object of the contract was for the supply of a corporate, as distinguished from a governmental want; there it was supplying water for the hydrants, street and fire purposes; here the construction of a railroad. In the first case it was held that the village in its governmental character had sufficient interest in the welfare of its citizens and inhabitants to secure to each of them a supply of water at reasonable

rates. In the case before us it was well known and generally appreciated that for at least some very substantial part of the discomfort, damage and injury occasioned to the abutters by even the most careful and proper prosecution of the work, the abutter could not recover indemnity or compensation. It was also appreciated that in the prosecution of all great works, at times negligence and fault will occur, and that such fault will often be on the part of irresponsible parties from whom there would be small chance of recovering pecuniary redress. Therefore, though the city might not be liable for injuries occasioned by such negligence, it was entirely proper, if not morally obligatory upon the part of the rapid transit commissioners to secure the abutting owners from loss or damage occasioned by negligence and improper conduct of the work."

In *Rigney* v. *N. Y. C. & H. R. R. R. Co.* (217 N. Y. 31) it was held, where a contract between the city and the railroad company with reference to the construction of a railroad which involved a change of grade, contained a covenant on the part of the defendant that in the event of any damage resulting to any person or property from the work the defendant would pay and liquidate the same at its own expense, and assume the liability therefor, that this amounted to more than a covenant to indemnify the city; that it was in addition an assumption of liability for damages which might result to any person from carrying it out, and plaintiffs might recover upon the theory that the covenant or promise in the contract between the city and the railroad company to pay damages resulting from the change of grade was for their benefit within the doctrine of *Lawrence* v. *Fox*. In that case the *Pond* case and the *Smyth* case, before cited, were approved, and it was said: " The second element of liability, viz., some obligation or duty owing from the municipality to the owner of the abutting property, is also apparent. It exists in the fact that the city is under some obligation to protect its inhabitants, and when it enters into a contract for public work, which may result in damage to one of such inhabitants, for which otherwise he would be without remedy, the municipality may require the contractor to compensate the person injured."

Within these authorities it would seem clear that there was such privity between the city, the party to the contract,

and the abutter as would authorize the abutter to sue upon the contract made in his behalf. The case of *Newman* v. *Bradley Contracting Co.* (100 Misc. Rep. 1) is disapproved.

It follows that the judgment, so far as it dismisses the complaint against the Bradley Contracting Company, must be reversed and a new trial granted, with costs to appellant to abide the event.

SCOTT, LAUGHLIN, DOWLING and DAVIS, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.