BERTRAM E. WILSON and Another, Plaintiffs, *v.* OLIVER COSTICH COMPANY, INC., Defendant.

Fourth Department, January 7, 1931.

*Arthur V. D. Chamberlain*, for the plaintiffs.

*George J. Skivington*, for the defendant.

TAYLOR, J. August 17, 1924, Brighton Sewer District No. 4 of the town of Brighton, Monroe county, N. Y., as first party, made a contract with this defendant, as second party, to excavate for a sewer system in that town. Under this contract defendant became responsible for all acts of its agents, servants and employees, and for all damages caused through negligence, and agreed to indemnify the first party, and to save it harmless against all suits at law, etc., resulting from the doing of the work. The contract also contained this provision: " Repair of injuries. In case any injury is done along the line of the work in consequence of any act or omission on the part of the Contractor, or his employees or agents, in carrying out any of the provisions or requirements of this contract, the Contractor shall make such repairs as are necessary in consequence thereof, at his own expense and to the satisfaction of the Engineer, and in case of failure on the part of the Contractor to make such repairs, they may be made by the Engineer, and the expense thereof shall be deducted from any moneys due or to become due the Contractor under this Contract."

A continuation of the sewer system into the adjoining city of Rochester was arranged for at about the same time, under a separate contract, and blasting was carried on in the city of Rochester as well as in Brighton. The jury has found that as a result of blasting operations under the contract, in the town of Brighton only, plaintiffs' residence, situated 300 to 400 feet from the blasting operations and in the city of Rochester, was seriously jarred and

damaged, and a verdict has been rendered for plaintiffs for damages sustained. This verdict rests upon findings that the plaintiffs' premises were so located as to be physically within the contemplation of the quoted provision of the contract, i. e., " along the line of the work," and that the said contract provision gave plaintiffs a direct right of action as beneficiaries under the contract. No question of negligence is involved.

Before *Seaver* v. *Ransom* (224 N. Y. 233) had been decided by the Court of Appeals, the principle announced in *Lawrence* v. *Fox* (20 N. Y. 268) had been much discussed and analyzed. From this discussion a general rule had arisen in this State that a third person could not recover on a contract made by two other persons unless there was privity between a promisee in that contract and such third person, or some obligation or duty owing from the former to the latter which would give the third person a legal or equitable claim to the benefit of the promise. This obligation, it was said, would so connect the third person with the contract as to be a substitute for privity between him and the promisee. In *Seaver* v. *Ransom*, Judge POUND discusses at length case and text-book commentaries upon the *Lawrence* v. *Fox* principle and specifies four classes of cases in some one of which few cases would fail to be included, " either categorically or in principle," which came under the general rule. Leaving three of these out of consideration, the class mentioned " thirdly " was " the public contract cases," illustrated by citations on page 238 of the opinion. The right of the inhabitants of a municipality — as there announced — to sue under such a contract seems to be based upon municipal paternalism, upon a recognized obligation of the municipality to represent its citizens in making contracts involving their welfare (sometimes but not always under the police power) to an extent such that a direct right of action at law accrues to an individual citizen upon breach of the contract. A case illustrative of a broad recognition of this theory is *Smyth* v. *City of New York* (203 N. Y. 106). There the city contracted with one McDonald to construct a sewer, and in the contract McDonald agreed to save abutting owners harmless from damage resulting from blasting. The concussion damaged Smyth's abutting buildings. He sued the contractor and recovered. The Court of Appeals said that the sewer construction was a corporate rather than a governmental want and that it was morally obligatory upon the city through its Rapid Transit Commissioners to secure the abutting owners from loss or damage — which could only be accomplished by placing liability upon a responsible contractor.

The " moral obligation " as a sufficient consideration for a legal

contract has been discussed — in the main frowned upon — from Lord MANSFIELD (who did not frown) to the present time. While it has been disapproved, *e. g.*, in *Haefelin* v. *McDonald* (96 App. Div. 213, 222) and *Durnherr* v. *Rau* (135 N. Y. 219), it is recognized in the *Smyth* case as stated and, in spirit at least, in *Rigney* v. *N. Y. C. & H. R. R. R. Co.* (217 N. Y. 31) and *Schnaier* v. *Bradley Contracting Co.* (181 App. Div. 538). But these plaintiffs' rights should not be held to depend upon a moral obligation alone, as we shall endeavor to show.

Plaintiffs were not inhabitants of the town of Brighton. But they were residents of the same State and county, the same neighborhood. Their property was within reach of the effects of the blasting, its injuries were inflicted " along the line of the work " (as the jury has found), its safety from injury may be held to have been within the contemplation of the parties to the sewer contract as directly and logically as if the house had been located in the town of Brighton. Under such circumstances simple justice seems to demand that plaintiffs should be as much entitled to receive the contractual protection of the sewer commissioners under this contract as if the line of municipal demarkation had happened to run west instead of east of their home. Should a citizen suffering such damage be remediless under these circumstances solely for geographical or other inconsequential reasons? Should the effort of the Brighton municipality representatives to protect these plaintiffs (assuming as we may that their effort reached that far), an effort joined in for a consideration by this defendant, fail because of the location of a municipal boundary line?

The Brighton sewer commissioners, realizing that the doing of the blasting work meant danger to dwellings in the vicinity, even if conducted with the utmost care, felt an obligation to the owners of such dwellings to protect them. Therefore, as a prerequisite to granting the contract to defendant to do the work, the board required defendant, as part consideration, to bind itself to repair all damages caused not just in the town of Brighton, but " along the line of the work." The jury has found that the home of these plaintiffs was so located that defendant's operations along the line of the work damaged the house. So, even though plaintiffs were not inhabitants of the municipality represented by the sewer commissioners, and, therefore, not exactly situated relatively as was the plaintiff in *Smyth* v. *City of New York* (*supra*), still, despite the accident of location of municipal residence, plaintiffs needed protection (as the sequel showed), the commissioners recognized that fact and the contractor was willing to contract to give it for a consideration moving from the other contracting party.

Plaintiffs were as much possessed of privity as was the plaintiff in the *Smyth* case. In every respect, except residential locus, the three parties in this case and in the *Smyth* case stand in like relationships — the municipality appreciating the danger and feeling the obligation to protect, the contractor having the same appreciation and being willing to bind itself to protect as consideration for obtaining the contract and the resident in the locality in serious jeopardy and unable to fend off injury by any legal means.

The determination in *Lawrence* v. *Fox*, as stated in the headnote and in portions of the prevailing opinion, was of broad scope. As time went on it was analyzed and discussed and at times was held to be of narrow application. The later cases (*e. g., Seaver* v. *Ransom, supra*; *Morgan* v. *Sanborn*, 225 N. Y. 454; *Glanzer* v. *Shepard*, 233 id. 236; *Ketcham* v. *Wilbur*, 241 id. 516) manifest an inclination toward the broad view, toward a " desire to do justice rather than to apply with technical accuracy strict rules calling for a legal or equitable obligation." " 'The doctrine of *Lawrence* v. *Fox* is progressive, not retrograde. The course of the late decisions is to enlarge, not to limit the effect of that case.' " (*Seaver* v. *Ransom, supra*, 240.)

It is a matter of mere terminology whether we say that the rights of these plaintiffs rest upon " a broad principle of public policy essential to the public welfare * * * without invoking the rule laid down in *Lawrence* v. *Fox* " (*Little* v. *Banks*, 85 N. Y. 258, 263, 264), or upon a trust relationship, or upon ratified agency or upon a right of subrogation, or upon privity by substitution, or that the principle of the " public contract cases " should be held broad enough — or be extended — to give relief to these plaintiffs. The absence of actual privity between plaintiffs and the sewer commissioners of the town of Brighton is not necessarily fatal. Plaintiffs' case may be held to rest upon one of the bases just mentioned, or it may be said that " Upon the making of the agreement the law, operating upon the acts of the parties, creates the essential privity between the promisor and the third person necessary to a binding contract between them." (6 R. C. L. 885, § 271.)

In the American Law Institute's Restatement of the Law of Contracts appear the following statements:

" Section 133. * * *

" (1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is,

" (a) a donee beneficiary if it appears from the terms of the promise in view of the surrounding circumstances that the purpose of the promisee in obtaining the promise of all or part of the perform-

ance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary;"

" Section 135. * * *

" (a) a gift promise in a contract creates a duty of the promisor to the donee beneficiary to perform the promise. This duty can be enforced by the donee beneficiary for his own benefit;"

" Section 139. * * *

" It is not essential to the creation of a right in a donee beneficiary or in a creditor beneficiary that he be identified when a contract containing the promise is made."

" Section 145. * * *

" A promisor bound to the United States or to a State or municipality by contract to do an act or render a service to some or all of the members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless,

" (a) an intention is manifested in the contract, as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences."

These quoted " statements " express the law of many jurisdictions in the United States, and the belief of the compilers as to what the law should be generally. They are not statements of New York State law. But in *Seaver* v. *Ransom (supra)*; *Farnsworth* v. *Boro Oil & Gas Co.* (216 N. Y. 40); *New York Pneumatic Service Co.* v. *Cox Contracting Co.* (201 App. Div. 33; affd., 235 N. Y. 567) and the other cases already cited in this opinion, we note a distinct tendency to accept the statements as sound and to recognize them as the law of this State as occasion may permit. With this tendency we are in accord, as to the record here presented. We are venturing somewhat into new territory, but the pathway — as it seems to us — has been pointed out.

We realize that in *French* v. *Vix* (143 N. Y. 90) and in other New York cases, *e. g.*, those discussed in *Derrick* v. *Kelly* (136 App. Div. 433, 435, 437), it has been held that as among natural persons (*i. e.*, no municipality being involved) a contractor causing damage through concussion caused by blasting — done without negligence or corporeal trespass — cannot be held liable to abutting owners for resulting property damage. But in passing it is to be noted that the rule stated in *French* v. *Vix (supra)* — distinguished in *Smyth* v. *City of New York* (203 N. Y. 106, 112) and distinguish-

able for the same reasons in the instant case — has not escaped adverse criticism. (See 30 Am. Law Rev. 149–153.)

The commentator argues, in substance, thus: To say that the casting of a piece of wood upon abutting lands by blasting operations creates a cause of action in the owner of the lands impacted (*Sullivan* v. *Dunham*, 161 N. Y. 290), while to shake down a building upon the lands through concussion caused by the blasting, leaves the injured owner without remedy, raises a distinction difficult for some minds to grasp. We have no intention to criticise the determination reached in *French* v. *Vix* (*supra*). It is not necessarily applicable to the instant state of facts. Third-party rights under a contract between natural persons are not here. We are not compelled in this case either to point out (or to confess our inability to indicate) the logical differentiation which ought to be made as to third-party rights when the contracting parties are both human beings in the one instance, and one party is a municipality in the other. We go no further than to express the opinion that in this " public contract case " a " broad principle of public policy " should operate in plaintiffs' behalf, in spite of the absence of privity — should effectuate the municipal effort to protect neighboring citizens to the extent of reaching beyond a town boundary line to safeguard private rights which would otherwise be defenseless against violence caused by work done to promote the public welfare.

The claim of these plaintiffs should be upheld. When property is about to be subjected to a risk of damage, and B (a municipality) and C, who are to set in motion the operation creating the risk, see fit to contract that one of the obligations of C, the active operator, shall be to save harmless the owners of all property near enough to be placed in jeopardy through the operations, A should have the right to recover from C in case his property in the recognized hazard zone be damaged in carrying on the work in question.

The jury's conclusion that plaintiffs' house was located " along the line of the work," because it was likely to be damaged and was damaged by the work done, is not contrary to or against the weight of the evidence. We find no reason for disapproving the result reached and conclude that defendant's exceptions should be overruled, the motion for a new trial denied and judgment ordered for the plaintiffs, with costs.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Defendant's exceptions overruled, motion for a new trial denied, with costs, and judgment directed for the plaintiffs upon the verdict, with costs.