## MIDEASTERN CONTRACTING CORPORATION v. O'TOOLE.
## SAME v. O'ROURKE.
## SAME v. BARTILIUS.
### Nos. 120–122.

Circuit Court of Appeals, Second Circuit.
Feb. 1, 1932.

James I. Cuff, of New York City, for appellant.

Anthony J. Ernest and Harry S. Austin, both of New York City, for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The defendant had a contract for the construction of a section of a subway in Brook-

910

lyn, in performing which it was necessary to put up temporary buildings. One of these was a two story house, part of the ground floor of which it used as a shelter for electricians, and an adjacent part as a "motor-generator" room, to charge batteries necessary in excavation. These two rooms were separated by a partition, put up after the house had been built, of wood for the lower third, and for the balance, of wire mesh covered on one side by tar paper. Electric wires carrying alternating current entered the "motor-generator" room, at one corner, and ran along the ceiling to a motor connected with a generator which made direct current for the batteries. The wire carrying the direct current in turn ran along the ceiling, and down the tar paper to a switch, fastened to the wall. To the under side of the switch loose wires might be connected, to be plugged into the batteries, and other wires again ran up the tar paper wall, and through it into the electricians' room, where they passed to some heaters. The resistance of each heater was about six and a half amperes, but the evidence was in conflict as to their number. The wires from the switch to them were of a size designed for, and capable of carrying, not more than fifteen or twenty amperes. On the night in question two witnesses swore that they were looking at the wires and saw a sudden sparking followed by a blaze near the switch. The wall then caught fire and the room was filled with smoke and flame. Two other witnesses testified that they had seen a fuse in the switch so plugged as to be short circuited; one of these said that otherwise it would not have carried the amperage of the heaters. The plaintiff's theory was that the wires had been overheated, had impaired their insulation and by some sudden jar or the like had come near enough to each other to short circuit the direct current.

The defendant had wanted two gangs of men to work at a night shift in the subway. Under its arrangement with the men's union it telephoned to their headquarters and asked the man in charge to send over enough to fill the gangs. How many came does not appear, but one, Fleming, who expected to be their foreman, went to the house, received them when they arrived, and told them to go upstairs, put on their working clothes and wait until he saw the superintendent. When he came back, he was to tell them whether they would be in the gangs. The men went to the upper story, which was crowded with some fifty or more. While there the lights went out, and the room became filled with smoke. Finding the exit barred by the crowd, and frightened by the smoke, some of them, among whom were the three plaintiffs at bar, broke the windows and jumped out. The actions were for their injuries so caused.

They sued as invited persons, or "business guests," since, if they had been already employed, they could recover only under the Workmen's Compensation Law (Consol. Laws, c. 67). If not, they were clearly right in claiming to be invited persons, and, as such, entitled to a reasonably safe place for their entertainment. Middleton v. P. Sandford Ross, Inc., 213 F. 6 (C. C. A. 5); N. Y. Lubricating Oil Co. v. Pusey, 211 F. 622 (C. C. A. 2); Constantino v. Watson Contracting Co., 219 N. Y. 443, 114 N. E. 802; McDonough v. Reilly Repair & Supply Co., 45 Misc. Rep. 334, 90 N. Y. S. 358. We cannot accept the ruling in Oats v. N. Y. Dock Co., 109 App. Div. 841, 96 N. Y. S. 813, if it is to be understood as holding that an applicant for work who waits where his prospective employer tells him, is in the position of a mere licensee. The evidence did not prove beyond dispute that they had already been employed, and the judge rightly left the question to the jury, together with a general instruction that for a recovery they must also find that the defendant failed in its duty, and that the fire happened through its default. The jury found for the plaintiffs and the defendant appealed from the judgments entered on their verdict. To dispose of this appeal we need discuss only one point, and that based upon the conduct of the trial, for we have no doubt that there was enough evidence to support a verdict that the defendant had failed in its duty, and that its failure resulted in the fire. That the injuries were consequences to be anticipated in the circumstances was also open to their determination.

The critical question is the judge's charge as to the effect of two sections of the defendant's contract with the city. The first of these (section 23) provided that "buildings in the immediate vicinity of shafts or tunnel entrances shall be as nearly as practicable fire proof." The second (section 101), that, in case compressed air was used on the job, buildings used to house workmen should be "suitably fire-proofed." In his colloquial charge the judge contented himself with the statement that the defendant was bound to make the premises reasonably safe, without going into many details. So far there was indeed no error, though the

jury were not much enlightened upon the precise questions they had to determine. He then took up the defendant's requests to charge, designed to limit the issues more explicitly, and first told them that the provisions of the contract regulating compressed air were not applicable, since it had not been used on the job. Later he refused to direct them that the defendant had no duty to make the buildings fireproof, and, elaborating this refusal, quoted to them section 101. This was probably only inadvertent, but the two instructions taken together were in direct conflict, because, if the provisions as to compressed air did not apply, section 101 was out of the case, and the defendant was not bound to make the building fireproof. To quote that section was at least an invitation to treat it as the measure of the defendant's duty, independently of what the jury might otherwise have thought enough. The error was plain, and may have decided the verdict.

The plaintiffs answer that it was of no consequence, because the difference between section 101 and section 23 was only verbal at most, and section 23 was not limited to compressed air. This is quite true, and we should disregard the lapse, if section 23 governed the relations between the parties. It did not. The only theory on which the contract could control was that the sections in question were introduced for the benefit of workmen and persons in the plaintiffs' position, and that they might sue upon them as beneficiaries of the promises they contained. There is indeed authority for this in the law of New York, when the promisee as here is a municipal corporation (Smyth v. City of New York, 203 N. Y. 106, 96 N. E. 409; Wilson v. Costich Co., 231 App. Div. 346, 247 N. Y. S. 131, affirmed 256 N. Y. 629, 177 N. E. 169), though the general doctrine of the "donee beneficiary" (Restatement of Contracts, § 133 (1) (2), has long been compromised by the original limitations of Lawrence v. Fox, 20 N. Y. 268. It is however everywhere a condition upon the right that the promisee shall intend to give the beneficiary a right of action upon the promise; that the promise be exacted for his benefit. In the case at bar we may assume arguendo that this was true as to section 101, but it was not true as to section 23, because of its limitation to buildings in the immediate vicinity of shafts or tunnel entrances. This showed that the promise was for the benefit of the city whose work might otherwise be imperilled. It cannot

have been intended for the men, for obviously those who chanced to be in remoter buildings were as much and as little in need of fireproof houses as those near by. While therefore the house in question was within the terms of section 23, for it was close to a tunnel entrance, the promise created a right upon which the city alone might sue. Nor do we think that the section or section 101 can be taken as an admission by the defendant of the standard of care proper in the construction of all buildings. Compressed air is a severe test upon the men exposed to it, and may well require frequent resort to a suitable shelter for rest and recuperation. It by no means follows that the housing suitable for them is necessary for the occasional uses to which such buildings are put when compressed air is not used.

Unless the evidence justified the direction of a verdict on the issue, the judgment must therefore be reversed. That seems to us too strong a position. It did not appear without contradiction that the wires leading to the heaters were overloaded. That depended in part upon their number; if there were only two, the wire was adequate, and the defendant's witnesses said that there were no more. To be sure, tar paper is an inflammable material, but in such temporary quarters, this did not inevitably make the building an unsafe place for business guests, if the wiring was proper, well installed, and not overloaded. In that event a jury might find the defendant to have been without fault, and perhaps it is open to doubt whether they should find anything else.

Upon the new trial the record may well be quite different, and it will scarcely be serviceable to consider the other points now raised. It will be desirable explicitly to tell the jury what issues control the defendant's guilt; merely to leave them with a statement that it must have been duly careful, is scarcely enough. The evidence presents various possibilities on which they must pass, and they will have a clearer notion of their duties, if these are stated in detail. As the case stood we think that the judge was, however, right in excluding the failure of the light circuit as a cause of the fire. There was no evidence of any defect in this, and the mere fact that the lights went out in the upper story where the men were assembled, before or at the moment when the smoke was perceived, gave no basis for assuming that the fire came from that circuit. While the evidence may indeed be different enough another time to require submission of this

912

as an alternative, it was not so upon this record.

██ Nothing else which took place deserves notice except the cross-examination of a witness called by the defendant, which brought out that the defendant was, or might be, insured. This happened because the defendant put in evidence a statement of one of the plaintiffs taken before trial. The witness who took it had to prove it, and on his cross-examination it appeared that he had been sent by an insurance company. This was entirely permissible. The defendant need not have put in the statement at all; when it chose to do so, it laid open to inquiry its authenticity, and that inevitably involved the relation of the person who took it. If he was in the employ of some one who stood to pay the judgment, it would certainly be unjust to suppress that connection; it makes no difference that this let in the fact that the real defendant was an insurance company. The plaintiffs were not responsible for that; they were only protecting themselves from an attack against the credibility of one of their number. Wabash Screen Door Co. v. Black, 126 F. 721 (C. C. A. 6); Lenahan v. Pittston Coal Co., 221 Pa. 626, 70 A. 884; Hummel v. Fischl's Sons, Inc., 175 App. Div. 489, 162 N. Y. S. 150; Chicago City Ry. v. Carroll, 206 Ill. 318, 68 N. E. 1087.

Finally, it is perhaps proper to suggest that the judge might well at times have exerted his authority more imperatively to control the conduct of the trial. The atmosphere of a courtroom is often critical in the result, and much depends upon his intervention to repress impertinent comment, questioning and suggestion. This is especially important in causes like this, when the jury is inevitably prone to be led away from the actual issues.

Judgment reversed; new trial ordered.